GREEN v. REDER.

1. SPECIFIC PERFORMANCE—LAND CONTRACTS—PART PERFORMANCE.
Specific performance of a contract to purchase land will
be decreed where there has been an entry upon land and
part performance of the contract.

2. SAME.
Where a party seeking to compel specific performance of a
contract to convey land entered into possession under
an agreement whereby he was to repair the fences in
return for use of the pasture, and all correspondence and
talk with the interested owners claimed to constitute the
contract for purchase was with only two of them and no
communication was had with the heirs of the third in-
terested party and no one had authority to act for them,
and deeds signed by the heirs of such deceased person
were returned by the depositary because of noncompli-
ance with conditions, specific performance was denied.

3. VENDOR AND PURCHASER—DEEDS—CLOUD ON TITLE—ACCOUNTING
—CONDITIONAL DECREES.
The opinion and decree in a former suit did not put a
cloud on the title to the lands justifying refusal of deeds
under a contract of sale of land where by such decree
and opinion title was found in certain persons, and it was
found that one of such persons as trustee had failed to
account for all of the money for which he should have
accounted, and he was given an opportunity to pay such
amounts, and it was further provided that, in default of
payment on demand, execution and levy might follow at
the option of the plaintiffs.

Appeal from Bay; Coumans, J. Submitted October
24, 1917. (Docket No. 50.) Decided December 28,
1917.

Bill by William Green and others against Stanislaus
Reder and another to enjoin waste. Defendants filed
a cross-bill for specific performance of a land contract.
From a decree for plaintiffs, defendants appeal. Af-
firmed.

*Roy E. Brownell (John E. Kinnane* and *A. W. Black,* of counsel), for plaintiffs.

*Weadock & Duffy,* for defendants.

MOORE, J. On February 1, 1913, plaintiffs began an ejectment suit against defendants. On the same day they filed this bill of complaint in chancery, praying for an injunction against defendants to restrain them from committing waste on a parcel of land in Monitor township, Bay county, by cutting and removing timber from said lands. The bill alleged plaintiffs were the owners of the lands in fee; that the trespass was continuing and was materially depreciating the value of the lands which were being stripped and denuded of timber. A temporary injunction was issued. Defendants answered generally and also by way of cross-bill, and prayed for a decree compelling specific performance by plaintiffs of an alleged agreement for the sale of the lands to defendants. They alleged that an agreement was made, partly oral and partly in writing, and that on February 21, 1910, deeds executed by plaintiffs conveying said lands to defendants were forwarded to the Lumbermen's State Bank at Bay City, accompanied by instructions to deliver the deeds to defendants on the payment of the purchase price, $7,800; that defendants refused to accept said deeds for the reason that the title to the lands was not in the plaintiffs but was outstanding in the Hatt heirs, who commenced a suit January 18, 1911, against plaintiffs for an accounting, and involving said lands, which found its way to the Supreme Court in the case of *Hatt* v. *Green,* 180 Mich. 383 (147 N. W. 593), and that the Supreme Court decreed that the claims of the Hatt children were a charge upon the lands.

Plaintiffs filed their answer to the cross-bill admitting the negotiations for the sale of said lands to defendants, the forwarding of the deeds to the Lumber-

men's State Bank for delivery on payment of the purchase price, and the refusal of defendants to accept and pay for the deeds, and that the deeds were returned by the bank and canceled, and the attempted deal was declared ended. It was averred plaintiffs were at the time of the execution of the deeds the owners of the lands in fee. It is further averred that defendants confederated with one Trombley to compel plaintiffs to pay a large sum of money, approximately $4,000, in settlement of the alleged claims of the Hatt children, 50 per cent. of which was to go to Mr. Trombley; that Trombley was the adviser of defendants in connection with their refusal to purchase; that he instituted suit against plaintiffs in the name of the Hatt children; and that said suit was finally determined by the Supreme Court, 180 Mich. 383 (147 N. W. 593), deciding that plaintiffs were the owners of said lands. They aver that the $200 which was paid to George Green by defendants at the time of the negotiations for the sale of the lands was tendered back to defendants. They allege that no action was taken or notice given by defendants with reference to said lands from the time of the service of the notice to quit in July, 1912, until March, 1915, and that the value of the lands in the meantime had increased several thousand dollars over and above what they were worth at the time of the alleged verbal agreement to sell. The case was tried in open court before Circuit Judge Collins, and on January 10, 1916, the court filed the following:

"In Green-Reder case I have come to the conclusion that the defendants are not entitled to a specific performance, and that the cross-bill should be denied. It would follow from this that the injunction should be granted as prayed for in the bill.

"Neither of you have argued the question of the amount of the waste, and I suggest that you appear before me before further action."

Later Judge Collins died, and Judge Coumans succeeded him. After a partial hearing by Judge Coumans, he filed an opinion to the effect that further testimony as to the rental value of the lands and alleged betterments be taken, and thereafter such testimony was taken, and after a full hearing a final decree was entered by Judge Coumans. Paragraph 1 of this decree is as follows:

"That the temporary injunction heretofore issued in this cause be and the same is hereby made permanent, and that defendants' cross-bill filed herein be dismissed."

Paragraph 2 of the decree provides that plaintiffs pay the defendants the sum of $561.13 for the $200 which had been tendered back but not accepted, taxes paid, and interest. In paragraph 3 of the decree it is decided that the use of the lands by defendants fully offset their claims for clearing, fencing, and betterments. This decree was entered on November 20, 1916.

Much of the brief of counsel for the appellant is devoted to the question of the power of the court to decree specific performance where there has been an entry upon the lands under the contract, and a part performance thereof. That question is no longer an open one in this State. See section 11397, 4 How. Stat. (2d Ed.), 3 Comp. Laws 1915, § 11979; *Beemer* v. *Hughes,* 179 Mich. 110 (146 N. W. 198).

There can be no doubt of the duty of the court to decree specific performance in a proper case. The question remains: Is this such a case? The facts are not very much in dispute. It is true defendant claims that he went into possession under the contract, while plaintiffs claim he went into possession as a tenant under them long before it is claimed any contract was made; he to do certain things for the use of the land.

Mr. Reder on his cross-examination testified, in part:

"The Greens first came to my place up there in connection with this land seven or eight years ago, something like that; I wouldn't swear for true.  *  *  *

"*Q.* The first deal that you made some eight or nine years ago, by which you were to fence the land for pasture?

"*A.* I couldn't remember.  I think there was;  I think I had it a year or so for pasture.

"*Q.* Before any deal was made of any kind to buy it?

"*A.* Something like that; I couldn't tell exactly.

"*Q.* You didn't pay anything for the pasture?

"*A.* No, sir.

"*Q.* But you made those fences for that, didn't you?

"*A.* Yes, there was some fences, and I had to go to work and fix them up.

"*Q.* And that was your understanding that the Greens and you had, that you would make the fences and you could have the use of the land; isn't that right?

"*A.* Yes, there was nothing but brush fences there.

"*Q.* Well, wasn't that the agreement?

"*A.* Yes."

All of the verbal talk and all of the letters which it is claimed resulted in a contract were with or written by William or George Green.  In none of the letters were the lands described or the terms of payment stated.  James Green died before the negotiations for the sale of the lands commenced, leaving as his heirs at law and entitled to his interest in said lands Mary Ett Green, his widow, and George Green and Nellie Green Warner, his two children.  Neither of defendants ever talked with or had any communication with Mary Ett Green or Nellie Green Warner regarding the purchase of said lands.  Neither George Green nor William Green had any power of attorney or authority in writing to contract from Mary Ett Green or Nellie Green Warner for a sale of the lands. The only writing signed by Mary Ett Green and Nellie

Green Warner which would alienate any of their interest in the real estate (see section 11395, 4 How. Stat. [2d Ed.], 3 Comp. Laws 1915, § 11977) were the deeds which were sent to the bank under the conditions before stated, which deeds were returned to the plaintiffs because the defendants refused to comply with the conditions.

It may be interesting and helpful at this point to turn to the case of *Hatt* v. *Green*, 180 Mich. 383 (147 N. W. 593). Four of the grandchildren of George Green joined in that proceeding, three of them declining to join were made defendants. William Green was the principal defendant. George Green, Mary Ett Green, and Nellie Green Warner were not parties to that litigation. The opinion closes as follows:

"The decree of the court below is reversed, and a decree will be entered in this court confirming the title to the lands in question in defendant William Green and the heirs of his cotrustee, but providing for an accounting against said defendant William Green in which he shall be charged with interest upon each share paid complainants from the time settlement was made with the oldest child, at which time the trustees must be held to have made their election."

The effect of that opinion is to hold that the title of the lands had been in William Green and the heirs of his cotrustee from the time settlement was made with the oldest child, which was before the deeds which were sent to the bank were made. The decree which followed the opinion in that case had these provisions in it:

"(1) That the title to and ownership of the lands mentioned and described in the pleadings in this cause * * * are hereby decreed to be in William Green, and the heirs at law of James Green, deceased, viz., Mary Ett Green, George Green, and Nellie Green Warner; said William Green being the owner of an undivided one-half of said described lands, and said heirs at law of undivided one-half of said lands.

"(2) That said defendant William Green pay or cause to be paid to Wade Hatt the sum of $475.01, which sum is the amount found by the court to be due said Wade Hatt from the trust fund arising from certain lands in Monitor township and set forth in the will of George Green, deceased.

"(3) And to Alfred Hatt, the sum of $327.85 from the trust fund. * * *

"(6) That upon failure of said defendant William Green to pay complainants Alfred and Wade Hatt, or their solicitors, the respective amounts decreed to them herein, on demand, then and in that event said complainants Alfred Hatt and Wade Hatt may, at their option, have execution for the collection thereof, and the same may be levied upon the interest of defendant William Green in the lands mentioned and described in the first paragraph of this decree, or collected otherwise by said complainants Alfred Hatt and Wade Hatt."

It is claimed this decree put a cloud upon the title which justified the refusal of the deeds sent to the bank. We think the effect of the opinion and decree was quite the contrary. They found the title in William Green, Mary Ett Green, George Green, and Nellie Green Warner. It further found William Green as trustee had failed to account for all of the money for which he should have accounted. The decree gives him an opportunity to pay those amounts, and provides that, if he does not do so on demand, an execution and levy may follow at the option of Alfred Hatt and Wade Hatt.

The decree does not purport to put a lien upon the land. The record shows William Green paid the sums named in the decree, and that no execution was ever taken.

The decree of the lower court is affirmed, with costs to the plaintiffs.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.