# Vandegrift, Appellant, v. Vandegrift.

*Contract—Illegal contract—Partnership—Violation of liquor law—Concealment of name of one of the partners—Act of June 9, 1891, P. L. 257, sec. 4, and act of congress, internal revenue laws, sec. 3259, tit. 35, ch. 4 (2 U. S. Comp. Stat. 2113).*

1. If a plaintiff is compelled to rely upon an illegal contract to make out his right to what he asks he cannot succeed.

2. A bill in equity by a surviving partner against the executrix of the deceased partner for an accounting cannot be sustained where it appears that the partnership agreement was for the manufacture and sale of distilled spirituous liquors, that the business was to be conducted in and under the name of one of the partners only, and that for years all the licenses, both state and federal, were taken out in the name of the deceased partner only, the name of the other partner being wholly concealed on account of creditors. Such a contract of partnership is an illegal contract in clear violation of the Pennsylvania Act of June 9, 1891, P. L. 257, sec. 4, and the act of congress, internal revenue laws, sec. 3259, tit. 35, ch. 4 (2 U. S. Comp. Stat. 2113).

3. Where a party seeking to recover is obliged to make out his case by showing an illegal contract or transaction, or through the medium of an illegal contract or transaction, he is not entitled to recover any advances made by him in connection with the contract, or money due him as profits derived from the contract.

Argued Oct. 14, 1909. Appeal, No. 94, Oct. T., 1909, by plaintiff, from decree of C. P. Washington Co., No. 1,777, In Equity, dismissing bill in equity in case of John H. Vandegrift v. Julia A. Vandegrift and Julia A. Vandegrift, Executrix of the Estate of John M. Vandegrift, deceased. Before MITCHELL,· C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for a partnership accounting and the appointment of a receiver. Before McILVAINE, P. J.

The opinion of the Supreme Court states the facts of the case.

*Error assigned* was decree dismissing the bill.

*R. W. Irwin*, with him *J. A. Wiley* and *L. R. Boyd*, for appellant.—It is a familiar rule of law that in the construction of contracts which are susceptible of two interpretations, one of which is legal and the other is illegal, that construction must prevail which will render the contract legal: Hobbs v. McLean, 117 U. S. 575 (6 Sup. Ct. Repr. 870).

This case is ruled by Brooks v. Martin, 69 U. S. 70. See also Hertzler v. Geigley, 196 Pa. 419.

*A. G. Braden*, with him *Chas. W. Campbell*, for appellee.— A contract of partnership to manufacture and sell vinous, spirituous, malt and brewed liquors in Pennsylvania, in which it is agreed that the business shall be run in the individual name of one of the partners and the other partner is to be a dormant partner and his name not revealed, is illegal both under the laws of congress and of the commonwealth of Pennsylvania: Mitchell v. Smith, 1 Binney, 110; Coulon v. Anthony, 4 Yeates, 24; Freedley v. Jacoby, 220 Pa. 609; Johnson v. Hulings, 103 Pa. 498.

The case of Brooks v. Martin was decided by a divided court and stands upon its own peculiar facts, and even upon those facts has not been recognized as authority by the courts of this state. It has been modified and distinguished in the federal courts; its soundness questioned in the courts of Massachusetts and New York and it has been repudiated by the courts of New Jersey: Hoffman v. McMullen, 28 C. C. A. 178; Snell v. Dwight, 120 Mass. 9; Todd v. Rafferty, 30 N. J. Eq. 254.

OPINION BY MR. JUSTICE POTTER, January 3, 1910:

This was a bill in equity filed by John H. Vandegrift against Julia A. Vandegrift, individually and as executrix of John M. Vandegrift, deceased, alleging a partnership between the plaintiff and John M. Vandegrift who was his son, and its dissolution by the death of the son, and praying for a receiver and an accounting. The answer denied the partnership and averred that the alleged partnership agreement was illegal and void. From the finding of fact by the trial judge, it appears that about the year 1892 John M. Vandegrift became engaged in the business of manufacturing and selling spirituous and

distilled liquors, and until his death on January 29, 1907, continued therein. When he began it was upon a lot of ground in Allenport, Washington county, Pennsylvania, which he leased from George C. Maxwell and on .which were erected a dwelling house, a three-story building equipped with the necessary machinery, tanks, tubs and utensils for distilling, a one-story building used as a free warehouse, and a frame stable; but in the beginning of the year 1906 this lot and these buildings were conveyed to him in fee and the title thereto remained in him until the time of his death.

John H. Vandegrift, the father, became insolvent prior to 1892, and several judgments were entered against him which remain unsatisfied. On June 1, 1903, a few days before the marriage of John M. Vandegrift to the defendant, he and his father entered into and executed a written agreement of partnership, a copy of which was found among the papers of John M. Vandegrift, after his death. John M. Vandegrift became dissatisfied with the terms of this agreement a few days after its execution, and as a result a second agreement dated, however, the same day, June 1, 1903, was executed. A true copy of this second agreement is exhibit "A," attached to the plaintiff's bill. These two agreements as a whole differed materially, but both of them provided for a partnership.

After these agreements were executed John H. Vandegrift received a share of the profits of the business, and was recognized by John M. Vandegrift as his dormant partner.

The business conducted by John M. Vandegrift was under licenses obtained from year to year in his own name from the United States government, and the court of quarter sessions of Washington county, Pennsylvania, and these licenses were obtained from the said United States government and the said court by the said John M. Vandegrift in his own name by his concealing the fact that John H. Vandegrift was interested in the business, and this was done with the knowledge of the said John H. Vandegrift, their purpose being to keep the creditors of John H. Vandegrift, who was insolvent, from learning that he had property that might be taken in execution by them.

John M. Vandegrift, the son, left a last will and testament which was duly probated, in which he left all his property, real, personal and mixed, to his wife, the defendant in this suit, and the license granted by the court of quarter sessions of this county to John M. Vandegrift for the year ending May 1, 1908, was transferred to her, and was renewed to her at the license court for the year ending May 1, 1909, and she was at the date of the filing of this bill in possession of the real estate, and ran the distillery under the license that had been granted to her. The transfer of the license for the year 1908 was not opposed by John H. Vandegrift, the plaintiff in this suit.

The court below reached the conclusion that the real estate described in the bill was not partnership property, and that while the written agreement disclosed the intention of the parties to form a partnership, in which the business of selling liquor was to be carried on in the name of one partner, with the name of the other partner concealed, such a contract was illegal, both under the laws of the commonwealth of Pennsylvania, and under the act of congress, and therefore the agreement could not be enforced in a court of equity. The bill was therefore dismissed without prejudice to the plaintiff's right to maintain an action at law to recover money due him as individual indebtedness of John M. Vandegrift, or to enforce his claim as tenant in common of the land.

The first question raised by the assignments of error, which is pressed, is whether a partnership agreement to engage in the manufacture and sale of distilled spirituous liquors, the business to be conducted in and under the name of one of the partners only, is an illegal contract which a court of equity will not enforce.

The Act of June 9, 1891, P. L. 257, sec. 4, under which the Vandegrift license was obtained, provides that an applicant for a license as a distiller or wholesale liquor dealer shall set forth under oath in his petition to the court of quarter sessions "that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person shall be in any manner pecuniarily in-

terested therein during the continuance of the license." A willful false statement in the petition subjects the applicant to indictment for the crime of perjury, and upon conviction, to the penalties belonging to that crime. Had the petition contained no averment that no person other than the applicant was interested in the business, or had it shown that some other person had an interest, the license would undoubtedly have been refused.

The act of congress, internal revenue laws, sec. 3259, tit. 35, ch. 4 (2 U. S. Comp. Stat. 2113) provides that "every person engaged in, or intending to be engaged in, the business of a distiller or rectifier, shall give notice in writing, subscribed by him, to the collector of the district wherein such business is to be carried on, stating his name and residence, and if a company or firm, the name and residence of each member thereof, the name and residence of every person interested or to be interested in the business." A false notice is made punishable by fine and imprisonment.

The fact is undisputed in this case, that during the entire term of the agreement, John M. Vandegrift each year violated the laws, both of Pennsylvania and of the United States, by making false statements that no one but himself was interested in the business, and thereby subjected himself to liability for the penalties prescribed in the acts above quoted. These violations of law were expressly provided for in the agreement, which set forth that the business was "to be continued under the name of John M. Vandegrift as heretofore." So that at best, the agreement contemplated the conduct of the business in an illegal manner. And the trial judge further finds as a fact that the concealment of plaintiff's interest in the business "was done with the knowledge of the said John H. Vandegrift, their purpose being to keep the creditors of John H. Vandegrift who was insolvent, from learning that he had property that might be taken in execution by them."

The fact that the partnership contemplated was to be formed in a manner forbidden by the statute, would render it illegal, even though aside from the statute, there would be no illegality. If the plaintiff is compelled to rely upon an illegal

contract to make out his right to what he asks, he cannot succeed. Thus, in 1 Page on Contracts (1905) sec. 536, it is said: "No accounting can be had for a partnership in an illegal transaction, according to the weight of authority. Thus no action between partners can be maintained on a partnership agreement to make wagers with a third person, as to buy lottery tickets. Neither money advanced, profits made, nor losses paid, can be recovered; nor can an accounting be had." This rule is put by the authorities upon the ground of public policy.

In considering an illegal contract in Swing v. Munson, 191 Pa. 582, Justice DEAN said (p. 588): "In enforcing a policy in the interests of the whole public, the law takes but little note of the conduct of the immediate parties to the contract; the rule is, that courts, having in view public interests, will not lend their aid to the enforcement of an unlawful contract."

Counsel for appellant contend that under the authority of Brooks v. Martin, 69 U. S. 70, the present action for accounting can be maintained even though the partnership agreement was illegal. The point ruled in that case was to the effect that the money and securities derived from the profits of a partnership in an illegal business, after the partnership contract had been fully executed, must be accounted for by the partner by whom they were received, and that a court of equity would entertain a bill for an accounting filed against him by his copartner. The decision is also put upon the ground that the defendant was plaintiff's agent as well as his partner, and the case involved the additional question of an alleged fraudulent purchase of the plaintiff's interest in the partnership by the defendant.

But in McMullen v. Hoffman, 174 U. S. 639, the supreme court of the United States practically refused to follow Brooks v. Martin, saying by Justice PECKHAM (p. 668): "We simply say that, taking that case into due and fair consideration, we will not extend its authority at all beyond the facts therein stated. We think it should not control the decision of the case now before us." In that case, where the enforcement of a partnership contract was refused on the ground of the illegal-

ity of the business, it was further said (p. 669): "We must, therefore, come back to the proposition that to permit a recovery in this case is in substance to enforce an illegal contract, and one which is illegal because it is against public policy to permit it to stand. The court refused to enforce such a contract, and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations, and in order the better to secure the public against dishonest transactions. To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it, tends strongly towards reducing the number of such transactions to a minimum. The more plainly parties understand that where they enter into contracts of this nature they place themselves outside the protection of the law so far as that protection consists in aiding them to enforce such contracts, the less inclined will they be to enter into them. In that way the public secures the benefit of a rigid adherence to the law."

The true principle by which to determine whether a recovery can be had, in cases connected with illegal transactions seems to be clearly pointed out in Story on Agency, sec. 347, note: "The distinction between the cases where a recovery can be had and the cases where a recovery cannot be had, for money connected with illegal transactions, to be gleaned from all the authorities is substantially this: 'That where the party seeking to recover is obliged to make out his case by showing the illegal contract or transaction or through the medium of the illegal contract or transaction, then he is not entitled to recover any advances made by him in connection with the contract or money due him as profits derived from the contract; but when the advances have been upon a new contract, remotely connected with the original illegal contract or transaction and the title or right of the party to recover is not dependent upon that contract, but his case may be proved without reference to it, then he is entitled to recover.' "

In the present case, the plaintiff cannot maintain his suit without proving and relying upon the illegal contract; this puts it within the class which a court of equity will not aid, and places it with the cases in which it will leave the parties as it finds them.   There was no relationship of agency here, hence the decisions in Hertzler v. Geigley, 196 Pa. 419, and Com. v. Shober, 3 Pa. Superior Ct. 554, and other cases involving the principle of agency, do not apply to the question here involved.

The assignments of error are overruled, and the decree of the court below is affirmed, and this appeal is dismissed at the cost of appellant.