## BEEMER *v.* HUGHES.

1. INTOXICATING LIQUORS—LICENSE—PARTNERSHIP.

   An agreement among three liquor dealers to engage in the retail trade as partners, two of them signing the bond and only one partner obtaining a license, was illegal and void.

2. EQUITY—PARTNERSHIP—REMEDIES—ACCOUNTING—ILLEGALITY.

   Equity will not require an accounting of one of three partners who undertook to conduct a saloon under a license procured by one of them; the others acting as bondsmen, while the licensee paid the fee.

3. SPECIFIC PERFORMANCE—STATUTE OF FRAUDS—ORAL CONTRACTS —PART PERFORMANCE—PAYMENT.

   Where it was shown that complainant, being in possession of the property under an oral contract of purchase, paid the consideration agreed upon in three installments and was recognized by defendants as the owner, paid taxes and made valuable improvements, equity has jurisdiction to enforce the parol agreement on the ground of part performance so as to take the case out of the statute of frauds.[1]

[1] On the question whether sufficiency of possession alone is ground for granting specific performance of parol gift of, or contract to convey, real property, see note in 8 L. R. A. (N. S.) 870.

4. SAME—TRUSTS—CONSIDERATION—LAND CONTRACT.
   The transaction *held* not to create a resulting trust of
   the kind prohibited by 3 Comp. Laws, § 8837 (4 How.
   Stat. [2d Ed.] § 10677), defendants advancing the funds
   and taking title under an oral contract to convey to
   complainant when he should pay the consideration.

Appeal from Clare; Dodds, J. Submitted November 14, 1913. (Docket No. 123.) Decided March 26, 1914.

Bill by Oliver Beemer against Ellis Hughes and others for specific performance and an accounting. From a decree for complainant, defendants appeal. Affirmed.

*Quinn & Quinn,* for complainant.

*George J. Cummins (C. W. Perry,* of counsel), for defendants.

KUHN, J. The important facts which resulted in the present controversy are stated in the opinion of the circuit judge, as follows:

"The bill of complaint in this cause is filed for the purpose of compelling the conveyance to complainant, by the defendants Elmer and Ellis Hughes, of two pieces of real estate situate in lot 6, block 1, and by the defendant Ellis Hughes one piece in lot 5 of said block, all in the city of Harrison. The time and circumstances of dealings by which the legal title to these three pieces of land became vested in the defendants mark them as three entirely distinct and separate transactions. With regard to the first, upon which the saloon building stands, immediately before the 1st day of May, 1903, one Ellsworth held the legal title, and had executed to one Crawford an agreement by which Crawford was to pay for the said land $800 on or before May 1, 1903. Upon this agreement Crawford had paid $200, and had placed upon the property in question $50 worth of ice. Complainant was then in full possession of the saloon building. Complainant and Crawford were not friendly, because

Crawford had bargained for the saloon property, on which complainant had carried on his saloon business for some years. Complainant and Ellis Hughes went to Temple, where Crawford resided, to negotiate for his right in said saloon property, and it resulted that Crawford, not being able to pay the remainder of the consideration on the agreement, and receiving $50 for his ice, abandoned his right to the land, and, when the time named in the agreement had elapsed, Ellsworth deeded it to the defendants Ellis and Elmer Hughes. The bill and answer agree that the whole consideration was paid by defendants in the first instance. The claim made in the bill is:

" 'That immediately upon their arrival in Harrison [from Temple] your orator paid the said Ellis Hughes the said $50 paid by him to said Crawford [for the ice], and the same day or the next day paid him $300 more to apply on the $600 remaining back on said Crawford contract, which said $600 had been paid by said Ellis Hughes, and a deed to said property taken in the name of Ellis Hughes and Elmer Hughes, which deed was taken in the name of said Ellis Hughes and Elmer Hughes for the benefit of your orator. That shortly thereafter and within about three or four months your orator paid the remaining $300 to the said Hughes Brothers. * * *'

"The statement in the original answer with regard thereto is:

" 'That about May 1, 1903, they purchased the contract interest which Thomas Crawford had, * * * and that thereafter in a few days obtained a deed for the same from said Ellsworth in pursuance to the terms and covenants of said contract, paying said Ellsworth the amount due therefor under the terms of such contract; that they paid their own money for such property, for the purpose of acquiring it for themselves, and not for the use and benefit of said complainant, or to hold it in trust for said complainant; that at the time said property was so purchased by these defendants no agreement had been had or made between them and said complainant that they were to purchase said property for his benefit and use, or that he was to have any interest therein; that said complainant never paid these defendants any money on account of their purchase of said building or to repay them for the money which they had paid for the same; and that said complainant never had, neither has he at this time, any interest therein by reason

of having paid defendants for the same or for any interest therein.'

"And in the amended answer the statement is:

" 'That complainant also dealt with these defendants in the store, * * * and at times was indebted to them by such trade, and that defendants frequently and continually advanced money to complainant to enable him to carry on the said saloon business and livery business, and, to secure defendants for all such advances made, and to secure them for the money which they advanced for the purpose of purchasing the buildings mentioned in the bill of complaint herein, they took the title to all such buildings in their own name for their own protection and for the benefit of all said parties, but with the express intention and understanding that when the entire business and dealings between the said parties were closed, that the complainant should have an equal share in said buildings and property with defendants subject to any amount he might owe to defendants. * * *' ".

It further appears that the complainant and the defendants, about May 1, 1903, entered into an agreement to conduct the saloon business as a copartnership; with the complainant having a one-half interest and the defendants Ellis and Elmer Hughes owning the other one-half interest. The complainant, however, took out the license, paid for the same, and the defendants Ellis and Elmer Hughes were his bondsmen. They took out no license, State or government, filed no bond, and by their admissions on the witness stand show themselves to be deliberate violators of the law; having been engaged in the business of retail liquor dealers without having complied with the statutory requirements necessary to entitle them to engage in this business. Some controversy having arisen as to an accounting of the partnership matters, a stipulation was entered into by counsel during the hearing of this cause to have their differences as to this accounting adjusted in this litigation, and proofs were taken thereon. The trial court very properly refused to determine this matter of account-

ing of an illegal business. As violators of the law, they cannot obtain relief from a court of equity. Their agreement to carry on this business in this way was void. *Niagara Falls Brewing Co.* v. *Wall*, 98 Mich. 158 (57 N. W. 99) ; *In re Reidy's Estate*, 164 Mich. 167 (129 N. W. 196).

It is contended that the entire transaction with reference to the purchase of the real estate is so connected with the establishment of the copartnership in the saloon business that it is a part of it, and that therefore no relief should be given the complainant. The answer does not claim that the building was sold to the copartnership, and the circuit judge found that the transaction with reference to the purchase of the building in which the saloon business was carried on was not connected with the saloon business, and this conclusion is substantiated by the testimony of the witnesses. The complainant urged that the deed was taken in trust for the complainant, but a careful examination of the testimony of complainant has satisfied us that the conclusion of the circuit judge that such was not the intent and understanding is correct. He found that the case made by the bill and substantiated by the proofs showed a parol agreement to sell the land, which had been fully performed by the vendee, and that, under the exception to the statute of frauds (section 9513, 3 Comp. Laws [4 How. Stat. (2d Ed.) § 11397]), equity should compel the specific performance of the agreement to convey. The trial judge saw the witnesses and heard them testify, and, under the well-established rule, we will not disturb his finding, where the testimony is conflicting, unless we are satisfied it is clearly wrong. He gave credence to the testimony of the complainant. The description and price clearly appear. He testified that the defendant Ellis Hughes agreed to give him a deed of the property upon receipt of $600; that he paid $300 within a day or two after the bargain with Crawford

was made, and the balance of $300 in two payments, one of $200 and the other of $100, some time later. The testimony as to payments was corroborated by the testimony of other witnesses. There was also testimony tending to show that the complainant in possession of the property was recognized by the defendants as owner; that taxes on the property were paid by the complainant, and valuable improvements made by him. In order to authorize a decree for specific performance of a parol contract to convey, etc., there must be (1) a contract, the terms of which are so clear and complete as to allow of no reasonable doubt respecting the enforcement of it according to the understanding of the parties; (2) such acts of part performance as, according to equitable principles, will justify its enforcement; (3) payment of purchase price. *Kinyon* v. *Young,* 44 Mich. 339 (6 N. W. 835); *Bartlett* v. *Bartlett,* 103 Mich. 293 (61 N. W. 500). We are of the opinion that these necessary essentials of a parol agreement to sell land and to compel its specific performance were established. It is urged that the proofs show that the testimony of complainant is convincing that it was the understanding that the conveyance to the defendants Hughes was to be a trust deed. With reference to this, the circuit judge found:

"It is true that complainant, in his testimony, says, in a number of places, that it was to be a 'trust deed,' but in a number of other places he leaves out the word 'trust,' and the latter testimony shows that he does not distinguish between a deed which expresses the trust clause and where it rests in parol. Besides, it appears that there had been other like transactions, which he says were carried out by defendants deeding directly to third parties at his suggestion, which would not have been the case had the deed expressed the trust. I do not think that there was any fraud or mistake in making the deed; it was made as intended, and furnishes no basis under the exceptions

to the statute of uses and trusts (3 Comp. Laws, § 8837)."

It is difficult to determine from the testimony of the complainant what his understanding was as to how the deed was to be taken, but we are of the opinion that the conclusion of the circuit judge that the parol agreement to convey was established is justified by the record, and therefore approve of it.

In the case of *Chapman* v. *Chapman*, 114 Mich. 144 (65 N. W. 215, 72 N. W. 131), cited by counsel for defendants, the unquestioned agreement between the parties was that the deed was to be taken in the name of the defendant, although complainant paid the purchase price, and complainant sought by the bill of complaint to ingraft upon it a trust resulting to himself. This the court held was prohibited by section 8835, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10675). We think the facts as found in the instant case make it clearly distinguishable from the *Chapman Case.*

We are also convinced that the court arrived at a proper conclusion with reference to the other pieces of property in controversy. His opinion with reference thereto is as follows:

"With regard to the smaller piece known as the barber shop, the testimony is not clear either as to the contract or the payment of the consideration. It is not, however, in any way connected with the saloon business, and the dealings with it after its purchase, in that each party rented it and exercised acts of ownership over it, seem to show that it was understood to be held jointly. At any rate, the proof is not clear in complainant's favor, as the rule requires. It must therefore be held, as admitted by defendants, that complainant owns only an undivided one-half interest. The Brandt property is so mixed up with the so-called saloon copartnership that even the admission of defendants of the one-half interest owned by complainant will not justify a decree in complain-

ant's favor without taking into consideration the whole matter of saloon accounts, which I am satisfied, under the circumstances of this case, a court of equity should not do."

The circuit judge also found that the complainant owed the defendants $64.75, and Hughes Bros. & Co. $54.74, and decreed that these amounts must be paid by complainant. It is urged that, if an accounting is to be gone into under the stipulation made, it should be a mutual accounting, or the accounting should not be considered in any way. The complainant not having appealed from the decree, defendants should not complain of this provision, which is in their favor.

The decree is affirmed, with costs to complainant.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ. concurred.