Brill, Appellant, vs. Salzwedel, Respondent.

*June 4—September 10, 1940.*

552

554

For the appellant there were briefs by *Lueck, Skupniewitz & Lueck* of Beaver Dam and *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *Arthur W. Lueck.*

For the respondent there was a brief by *Grady & Fairchild* of Portage, and oral argument by *Thomas E. Fairchild* and *Daniel H. Grady.*

The following opinion was filed June 20, 1940:

MARTIN, J.   The foregoing statement discloses that this is an unusual case. The defendant appears to be somewhat reluctant to admit that the agreement of March 1, 1937, is a partnership agreement. The plaintiff contends that it is a

partnership agreement, and the prayer of his complaint is, (1) that an account be taken of all of said partnership dealings and transactions from March 1, 1937, to the commencement of this action, and an account of the moneys received and paid out by defendant in the conduct of said business, and that defendant be required to make such accounting; (2) that defendant be adjudged to pay to plaintiff out of the net profits of said business, as such net profits shall be determined on such accounting, (a) the sum of $350 due to plaintiff for one half of plaintiff's investment in said business, and (b) the $8 weekly withdrawals due plaintiff, commencing January 2, 1939, and (c) one half of the net profits remaining after such payments are made; (3) that it be adjudged that the new lease of said premises made by defendant was made for the benefit of said partnership, and that after said payments are made to plaintiff that it be adjudged that the parties equally own said business and all personal property and equipment connected therewith, and that said business continue as in said agreement provided.

Defendant's counterclaims are based upon the theory that the agreement created a debtor-creditor relationship, and that as such it is a usurious contract. Upon that theory defendant seeks to recover substantial damages from the plaintiff in this action.

We find nothing ambiguous in the agreement. The language is simple and clear. Both parties knew what they were doing. It is our conclusion that they entered into a partnership agreement to conduct a lawful business, but unfortunately for the parties, their agreement provides for conducting the tavern business in an unlawful manner. We have not been cited any statutory authority which authorizes a partnership to take a license for the sale of intoxicating liquors in the name of one of the partners, and we have been unable to find any such law. Sec. 176.05 (3), Stats. 1937, so far as here material, provides:

"No such license shall be issued to any person acting as agent for or in the employ of another."

The articles of agreement make no reference as to whom the tavern license shall be issued. But it does provide for a joint interest with equal shares to both parties from the operation of the tavern business. Both parties knew when they signed the agreement that it would be necessary to obtain a license. Sec. 176.05 (1), Stats., so far as here material, provides:

"and common council may grant retail licenses, under the conditions and restrictions in this chapter [ch. 176] contained, to such persons entitled to a license under this chapter as they deem proper to keep places within their respective towns, villages, or cities for the sale of intoxicating liquors."

Sec. 176.05 (5), Stats., requires that the application for the license shall be so worded as to make clear to any licensing authority the past history of the applicant and his fitness to conduct the business for which application is made. Sec. 176.05 (9) provides:

"No license or permit shall be granted to any person or persons for the sale of any such intoxicating liquors, who is not of good moral character and a full citizen of the United States and of this state and who has not resided in this state continuously for at least one year prior to the date of filing the application; nor shall any such license be granted or issued to any person who has habitually been a petty law offender, or has been convicted of an offense against the laws of this state punishable by imprisonment in the state prison, unless the person so committed has been duly pardoned. The provisions of this subsection shall not apply to a Wisconsin corporation; such provisions apply, however, to all officers and directors of any such corporation."

Sec. 176.05 (13), Stats., authorizes a corporation to name an agent and permits a municipality to license such agent, but sec. 176.05 (9) requires that all the officers and directors of the corporation measure up to the standards as to good

moral character, full citizenship, and residence in Wisconsin for at least one year, as well as the other conditions and requirements of said section.

There is no legal sanction under our law whereby a so-called silent partner can engage in the tavern business in which intoxicating liquors are sold under a license issued in the name of one of the partners. In the case of corporations, full disclosure must be made as to all officers and directors of the corporation. There is an obvious reason for such disclosure. The licensing authorities are entitled to know the personnel of those directly interested in the business for the operation of which the municipality grants the license. The emphasis is upon the personal qualifications of the licensees and those in control of the liquor business. The latter is clearly indicated in the disclosures required concerning officers and directors of corporations, and the public is entitled to know who is actually in control, both as to ownership and management in any branch of the liquor traffic required by law to be licensed.

A partnership may be granted a license to operate a tavern and sell intoxicating liquors provided the names of the partners are disclosed in both the application for and in the license granted. But it may not, as in the instant case, obtain a license in the name of one of the members of the partnership.

The trial court made extensive findings on the merits of the litigation. The action was one in equity; both parties were asserting rights founded upon an illegal and void contract. In such a case, it is a well-settled rule that a court of equity leaves the parties to such a situation just where they placed themselves and as the court found them. Its doors are closed to any applicant for relief from or under such a contract. *Netherton v. Frank Holton & Co.* 191 Wis. 483, 489, 210 N. W. 379. See cases there cited,

The judgment of the lower court dismissing the action upon the merits with costs must be affirmed. However, in view of the fact that the findings in some respects may be determinative as to such facts in subsequent litigation affecting the rights of the parties as to the ownership of the fixtures, equipment, stock of goods, and other personal property located in the tavern in question which should not be passed upon in this litigation, we conclude that all such findings and such conclusions of law as relate thereto should be vacated and set aside.

*By the Court.*—The findings of fact and conclusions of law as indicated in the opinion are vacated and set aside. The judgment dismissing the complaint upon the merits with costs is affirmed.

A motion for a rehearing was denied, with $25 costs, on September 10, 1940.