MATTHEW EISENMAN,

*vs.*

PHILIP SEITZ and FRANCES SEITZ.

*New Castle, April 16, 1942.*

*Warren Roberts,* for complainant.

*James R. Morford,* of the firm of Marvel & Morford, for respondents.

THE VICE-CHANCELLOR: Complainant seeks to require his alleged partner, the respondent Philip Seitz, to account for complainant's share of the assets of a partnership which, he says, was created by oral agreement for the purpose of carrying on a retail liquor business. Respondents have demurred to the bill. The question to be determined is raised by the first ground of demurrer, which reads thus:

"The alleged oral partnership agreement is in violation of the laws of the State of Delaware regulating the sale of alcoholic liquors and is therefore illegal, void and against the public policy of the State of Delaware in this, that is to say, that said alleged agreement contemplated that the defendant, Philip Seitz, should take out in his own name and not in the name of said partnership a license for the sale of alcoholic liquors by a partnership consisting of the complainant, Matthew Eisenman, and the defendant, Philip Seitz."

From the bill it appears that "On August 16, 1935, the respondent Philip Seitz and the complainant entered into an oral partnership agreement by the terms of which Philip Seitz and the complainant were to engage in the business of retailing wines and spiritous liquors"; that "By said agreement, Philip Seitz was to take out a license for said business from the Delaware State Liquor Commission in his own name, and run the business as the apparent owner, but in fact for the joint partnership account of your complainant and Philip Seitz"; and that "complainant was to be a silent partner in the business." It is alleged that a store in Wilmington was leased for the business and that Philip "took out in his name a license from the Delaware State Liquor Commission for the running of said business at said store." Pursuant to the agreement, Philip operated the business "apparently as the sole owner, but in fact and in truth for the joint partnership account of himself and your complainant."

In November 1936, the Delaware State Liquor Com-

mission revoked the license "which stood in the name of Philip Seitz and under which said business was operated". The reason for the revocation is not alleged in the bill. Philip and complainant did not dissolve the partnership, but agreed that its funds "should remain intact until a new liquor store license was obtained from the Delaware State Liquor Commission, when business should be recommenced."

In November 1937, the respondent Frances Seitz, Philip's wife, procured a license from the Commission, which license "was so procured for the sole use and benefit of the partnership in the liquor business of Philip Seitz and your complainant, was used by said partnership, and was not used by Frances Seitz for her individual use, benefit or account." On the day following the grant of this license to Frances, Philip and complainant "did mutually confirm their partnership agreement, to the effect that the partnership should continue upon the same terms and conditions as it had with regard to the liquor store" first operated, except that the amount of compensation which had previously been allowed to Philip for running the store was increased. A new store was procured and the business was managed by Philip.

During the period of operation of each store, the partners made certain capital contributions to the enterprise. They also made various withdrawals from the partnership funds. In April 1941, Philip repudiated and denied "the partnership relationship existing between himself and complainant", and asserted that the business belonged to his wife, Frances, and that complainant had no interest in it. Frances likewise has taken the position that she owns the business, "whereas in truth and in fact said respondent Frances Seitz has no interest or ownership in said business at all." Complainant now makes claim to an interest in the partnership property, based upon the alleged agreement. At this stage of the case, the facts properly alleged in the bill must, of course, be accepted as true.

Respondents contend that the agreement is illegal because certain of its terms violate provisions of The Liquor Control Act, *Rev. Code of Del.* 1935, *Chap.* 176; and that, therefore, any rights which complainant would otherwise have under the agreement may not be enforced.

*Section* 6145 of the *Code* provides in part as follows:

"No 'sale' and delivery of 'alcoholic liquor' shall be made in this State unless such 'sale' and delivery be made by the Commission, by a 'manufacturer' or by other 'person' holder of a license of the Commission to 'sell' and to deliver such 'alcoholic liquor' * * *."

A partnership is a person within the meaning of the Act:

"6132. Sec. 3. Definitions:—* * *

"(8) The word 'person' includes as well as an individual, a partnership, a corporation, a club or any other association of individuals."

From the foregoing provisions of the Act, read in the light of other provisions, it is apparent that the holding of a license by one of the partners, in his own name, as the apparent owner of the business, does not serve to authorize the partnership to engage in the business of selling alcoholic liquor. The following section directs that applications for a license on behalf of a partnership must contain a declaration to that effect:

"6147. Sec. 18. License to Purchase For Re-Sale.—Any 'person' proposing to purchase 'alcoholic liquor' for resale shall make application to the Commission for license. * * *

"(3) If the license is to be used on behalf of a partnership or corporation, the application therefor must, in addition, be accompanied by a declaration to that effect signed by an authorized member of such partnership or an authorized officer of such corporation. In such case the partnership or corporation, or the directors and officers thereof shall be liable jointly and severally for any fine and costs to which the holder of the license may be liable."

Another section directs the cancellation of a license issued to one and used on behalf of another:

"6158. Sec. 29. License May be Cancelled or Suspended; When:— * * *

"(2) * * * c. The Commission shall cancel every license made use of on behalf of any 'person' other than the one to whom or on behalf of whom it has been issued."

By the terms of the present agreement, the partners "were to engage in the business of retailing wines and spiritous liquors", and instead of obtaining a license authorizing the *partnership* so to do, Philip "was to take out a license * * * in his own name, and run the business as the apparent owner, but in fact for the joint partnership account." Hence, to carry out the partnership agreement would require that a "person" not the holder of a license should buy and sell alcoholic liquor; that a license issued by the Commission should be used on behalf of a "person" other than the one to whom or on behalf of whom it was issued; and further, it is implicit in the agreement that the individual who should apply for a license intended to be used on behalf of the partnership, should not make a declaration of the intent so to use it. In these particulars, the agreement called for violations of the Act. The same illegal elements were preserved when the agreement was modified to make it operative while the respondent Frances Seitz held a license in her name. The parties executed the offending terms of the agreement, with the result that the Act was in fact violated.

It remains to be determined whether the illegality found to exist renders the agreement unenforceable so that one of the partners may not recover from the other, the share of the former in the partnership property. The Liquor Control Act has for its purpose, aside from the collection of revenue, the promotion of an "object of public policy", that is, the restriction and regulation of a kind of business which involves "danger to the morals of the people". Compare: *Strout Co. v. Howell,* 4 *Boyce* 31, 85 *A.* 666, 668. Patently, the agreement under consideration was violative of the Act in substantial particulars. The illegal terms are of such character as would tend to promote evasion or frustration

of restrictive and regulatory objects of the Act. This court will not lend its aid to one partner in a suit against the other, where, as here, to permit a recovery "is, in substance, to enforce an illegal contract, and one which is illegal because it is against public policy to permit it to stand." *McMullen v. Hoffman*, 174 *U. S.* 639, 19 *S. Ct.* 839, 851, 43 *L. Ed.* 1117; *Vandegrift v. Vandegrift*, 226 *Pa.* 254, 75 *A.* 365, 18 *Ann. Cas.* 404; *Strout Co. v. Howell, supra;* 47 *C. J.* p. 651, 652.

Complainant urges that it would be unjust and inequitable to allow these respondents to appropriate his investment in the partnership because of violations of the statute in which all of the parties participated. This contention is unavailing, for reasons ably stated in the opinion in *McMullen v. Hoffman*, 174 *U. S.* 639, 669, 670, 19 *S. Ct.* 839, 851, 43 *L. Ed.* 1117, with reference to an illegal partnership agreement then before the court:

"We must therefore come back to the proposition that to permit a recovery in this case is, in substance, to enforce an illegal contract, and one which is illegal because it is against public policy to permit it to stand. The court refuses to enforce such a contract, and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations, and in order the better to secure the public against dishonest transactions. To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly towards reducing the number of such transactions to a minimum. The more plainly parties understand that when they enter into contracts of this nature they place themselves outside the protection of the law, so far as that protection consists in aiding them to enforce such contracts, the less inclined will they be to enter into them. In that way the public secures the benefit of a rigid adherence to the law."

The demurrer must be sustained on the first ground assigned. The other grounds need not be considered.

An order accordingly will be advised.