356

PRICE v. MARCUS.

No. 32704.   Oct. 14, 1947.

Rehearing Denied Nov. 3, 1947.

*185 P. 2d 953.*

Sam S. Gill, of Oklahoma City, for plaintiff in error.

Jack Tellegen and Abe Cohen, both' of Oklahoma City, for defendant in error.

LUTTRELL, J.   This is an action for the dissolution of a partnership and for an accounting of partnership profits, brought by plaintiff, T. J. Price, against the defendant, Moe Marcus. The partnership contract involved in the controversy was for the operation of a tavern or taproom for the retail sale of beer in Oklahoma county.   Defendant, in his answer, denied that any such contract was entered into and, by amendment to his answer, alleged that if such partnership agreement was made that the same was contrary to law and public policy and therefore unenforceable.   The case was tried to the court as one of equit-

able cognizance, and at the conclusion of all the evidence the trial court found that the contract had been made, but that it was void for the reason that it was contrary to public policy, and denied the plaintiff relief.   Plaintiff appeals.

Examination of the evidence convinces us that the finding of the trial court that the contract was made as claimed by plaintiff is not clearly against the weight of the evidence. This leaves for consideration the question of whether or not the contract was void as one against public policy.   From the testimony of plaintiff it appears that the contract was oral and was entered into on about January 1, 1945.   Plaintiff was at that time an auditor in the Beverage Department of the Oklahoma Tax Commission, and shortly prior to that time and while an employee of Oklahoma Tax Commission, had, by arrangement with the Falstaff Brewing Company, procured from that company the promise of an allotment or quota of beer to be delivered to him if and when he should open a place for the retail sale of beer.   While the testimony as to the exact terms of the contract between plaintiff and defendant is somewhat indefinite, it appears from the plaintiff's testimony that he agreed with defendant that he, the plaintiff, would get the beer and fixtures for the taproom or tavern, and that the defendant would procure a lease and do everything else necessary to open up the taproom, and after defendant had reimbursed himself for money expended in reconditioning the building in which the business was to be conducted, the parties were to share equally in the net profits of the business.   The lease, the permit from the county judge, and license from the Tax Commission were all taken in the name of defendant, plaintiff being merely a silent partner in the operation of the taproom. Plaintiff testified that he did not want his connection with the place made public because of his position in the Tax Commission.   His testimony also dis-

closes that, after knowledge of his connection with the taproom in question came to the attention of the Oklahoma Tax Commission, he resigned his position as an employee of said Commission.

While the Legislature has permitted the sale of 3.2 beer as nonintoxicating (37 O.S. 1941 §162), it has by statute, prescribed regulations governing the sale at retail for consumption on the premises similar in many respects to those surrounding the sale of intoxicating liquors in states where such sales are permitted. Ex parte Strauch, 80 Okla. Cr. 89, 157 P. 2d. 201. In that case the court said:

"The courts are practically unanimous in holding that the state has the right to regulate places of business where 3.2 beer is sold, the same as to regulate places of business where intoxicating liquor is sold. The reason for this holding is that there is such a close relationship between the two that no real distinction, for the purpose of regulation, can be made. Hinebaugh v. James, supra; Johnson v. Board of Com'rs of Reno County, supra; Pellicer v. Sweat, Sheriff, supra; People v. Lewis, supra."

By 37 O.S. 1941 §162h, any person operating a place where such 3.2 beer is sold at retail for consumption on the premises must first secure a permit from the county judge. In order to procure such permit he must satisfy the judge that he is a person of good moral character; has never been convicted of violating the prohibition laws, or the gambling laws of the State of Oklahoma or any other state, and that he has not had any permit or license to sell such beverage revoked in any county within 12 months preceding the filing of the application. Upon filing the application five days' notice of the making of such application is required and any citizen of the county may appear before the county judge and protest the issuance of such permit.

By section 162e such retail dealer must also procure a license or permit from the Oklahoma Tax Commission, and as a prerequisite to the procuring of such permit must show that he is the holder of a valid county permit issued by the county judge.

Section 162q of said act provides that any person who engages in the sale of nonintoxicating beverages in violation of the provisions of this act shall be deemed guilty of a misdemeanor and, upon a conviction, shall be punished therefor as provided by the general statutes of this state.

It thus appears that the Legislature, although regarding 3.2 beer as nonintoxicating, deemed it necessary and to the public welfare to prohibit the sale thereof except under restrictions which in its judgment were essential to the protection of the public, and that plaintiff, under and by virtue of the contract relied upon, was engaged in the sale thereof without having complied with the requirements of the statutes above referred to, and in direct violation thereof.

As said in Watkins v. Grieser, 11 Okla. 302, 66 P. 332, it was the purpose of the law to place such sale in the hands of law-abiding men of reputable standing and character. While that case referred to the sale of intoxicating liquors, we think that unquestionably, by the statutes above referred to, the Legislature sought to effect the same purpose in the sale of 3.2 beer, and in such case a license issued only to one partner was not a license to the other partner. 37 C. J. 244, §106; 33 C.J. 536, §101.

In Beemer v. Hughes, 179 Mich. 110, 146 N.W. 198, a case involving a permit for the sale of intoxicating liquor, the Supreme Court of Michigan said:

"Where one only of the partners in a saloon business took out a license, the other partners who took out no license and filed no bond were deliberate violators of the law, and could not have an accounting in equity as to the partnership matters."

In Garrett-Williams Co. v. Watkins, 84 Vt. 299, 79 Atl. 387, Ann. Cas. 1913A, 846, the Supreme Court of Vermont said:

"Where a partnership engaged in the retail sale of liquor had no license, one partner alone having an individual license, one who sold liquor to the partnership cannot recover the price from the partner having no license; for the partnership had no right to buy, and hence the sale was illegal, as such a license would protect and impliedly give power to buy only to the individual to whom it was issued."

We think the rule announced in the cases above cited applies to the instant case, and that a contract violative of the statutory restrictions thrown around the sale of 3.2 beer is against the public policy of the state as expressed in its legislative act, and is therefore illegal and void. As said in Ruemmeli v. Cravens, 13 Okla. 342, 74 P. 908:

"The contract, therefore, which is the basis of this action is founded upon, and arises out of, a transaction prohibited by statute. All contracts which are in violation of law are illegal, and no action or suit will lie to enforce them. And it is immaterial whether the contract is directly prohibited, or arises collaterally out of transactions prohibited by statute. Nor is it material whether there is in fact any corrupt intention on the part of either of the contracting parties to violate the law. Courts are instituted to carry into effect the laws of the country, and they cannot become auxiliary to the consummation of violations of the law. There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is in itself illegal. And this is true as well of contracts malum in se as of contracts malum prohibitum, for the rule is extended to such as are calculated to affect the general interests and policy of the country. Kelly v. Courter et al., 1 Okla. 277, 30 P. 372; Garst v. Love & Word, 6 Okla. 46, 55 P. 19."

These and other similar cases are cited in 33 C. J. 536, note 59.

We have held in numerous cases that contracts which are against morality or public policy are, void, and that a plaintiff bringing an action thereon cannot recover. In Citizens National Bank v. Mitchell, 24 Okla. 488, 103 P. 720, 20 Ann. Cas. 371, we said:

"In any action brought in which it is necessary to prove an illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce alleged rights directly springing from such contract."

See, also, Trawick v Sabin, 128 Okla. 137, 161 P. 916; Sigmon Furniture Mfg. Co. v. Massey, 192 Okla. 436, 137 P. 2d 793. In the case last cited we held that the illegality of a contract was a question which the court itself would raise in the interests of its administration of justice.

Plaintiff contends that the sale of beer at retail is a lawful and legitimate business, and that there is no statute prohibiting an employee of the Tax Commission, or of the state, from owning an interest in any legitimate business enterprise in or outside of this state, citing State v. Rickards (Mont.) 40 P. 211, Capitol Gas Co. v. Young (Colo.) 41 P. 869; O'Neill v. Town of Auburn (Wash.) 135 P. 1000, and similar cases. He also calls attention to Parrott v. Gulick, 145 Okla. 129, 292 P. 48, in which we held that the sale and delivery of a motor vehicle without complying with the regulatory provisions of the law governing such sales did not render the sale void and prevent recovery under the contract.

In the cases from other states relied upon by the defendant, it does not appear that any regulatory features similar to those of our nonintoxicating beverage act were involved. In Parrott v. Gulick, supra, we called attention to the fact that the sale of the car was not prohibited by the statutes, and said that when, from the law, it appeared that the legislative intent was not to

prohibit an act, or render the prohibited act void, the courts should so hold, and should construe the statute accordingly.

In the instant case the regulatory provisions of the statute involved prohibit the sale of beer except by those persons who comply strictly with the provisions of the act, and make a sale in violation of the act a misdemeanor. It is readily apparent that in this respect the act differs from the one construed in Parrott v. Gulick, and that the decision in that case is neither applicable nor controlling here.

To hold valid a contract such as the one involved in the instant case would, to a large extent, nullify the regulatory provisions of the law, as it would permit the real owners of beer taverns to obtain permits in the names of other parties, and thus evade the positive requirement of the statute. The trial court correctly held the contract void.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY and CORN, JJ., concur. WELCH and GIBSON, JJ., concur in part and dissent in part.

WELCH, J. (concurring in part and dissenting in part). Respectfully I must dissent to the syllabus rule of law. That rule is too broad to be justifiable. It is not applicable to the exact issue before us, nor necessary to the decision of this case as I view it. The term "silent partner" is quite difficult of exact definition. It might include many situations where one had some share of profits under circumstances wholly without objectionable feature, wholly legitimate, and free from any taint of violation of public policy. For as long as we continue to recognize 3.2 beer as a nonintoxicating beverage, its sale is as legal as any other nonintoxicating beverage, or as legal as any other item of commerce, and generally the state has no interest purely in the division of profits from the sale of legitimate commodities consumed by the buying public.

This is not to say, however, that the trial court judgment does not merit affirmance which could more closely follow the determination below.

As I read the record, the chief contention in the trial court, if not the sole contention there, was that this contract, if it existed at all, was void and against public policy because of the specific official position of the plaintiff. As an officer or employee of the State Tax Commission, with supervisory authority and regulatory control over wholesale and retail of 3.2 beer, it was urged as against public policy to permit such a person to stand or insist on, or even suggest, a partnership under which he could get beer from the wholesalers or brewers and himself sell it by subterfuge through another man as the holder of a license from the Tax Commission.

It seems quite apparent to me, from the record, that the trial court, upon these contentions, and for these reasons, held the asserted contract to be against public policy, if the contract did exist. There is nothing to indicate the trial court would have so held but for the specific employment or official position of plaintiff.

I would affirm the trial court judgment, but upon the same ground as there, and without pronouncing the general rule of the majority syllabus which might well be construed to embrace many instances of wholly legitimate sharing of profits from licensed sale of nonintoxicating 3.2 beverages.

The last Legislature found occasion to specifically prohibit beer wholesalers, brewers or importers from any kind of partnership with retail dealers, or from owning an interest in the premises of such a retailer, or extending credit to the retailer, etc., S.B. 235, S.L. 1947, 37 Okla. Stat. Anno. 231, and if the Legislature had seen fit, it might likewise have prohibited any other person from any character of silent part-

nership, with like provision for future effective date of the provision, so that persons in such an association might withdraw therefrom before the prescribed date. But no such provision was then made as to the general public. I do not think it wholesome that such a rule, with all its intendments or possibilities, should be established by this decision, beyond the exact contentions of the parties, and given present, if not retroactive, effect according to the exact wording of the syllabus rule.

I think it would be better if we leave the making of this rule to the Legislature which could put the desired definition on the character of silent partnerships desired to be prohibited.

Since I think the trial court was correct under the special circumstances here shown, I concur in the result of affirmance though dissenting from the syllabus rule taken by the majority as the controlling reason for affirmance.

If that syllabus is or should be the rule, I find it no reason for, nor guidance to, an affirmance of the trial court judgment that this agreement asserted by the plaintiff in the employment or position he occupied was against public policy because of his occupation.

I am authorized to say Mr. Justice GIBSON concurs in these views.

Rehearing Denied Nov. 10, 1947.