SPONHOLZ, Appellant, vs. MEYER and wife, Respondents.

*May 5—June 1, 1955.*

For the appellant there was a brief by *Kenneth M. Kenney* and *Wolfe, O'Leary & Kenney,* all of Milwaukee, and oral argument by *Kenneth M. Kenney.*

For the respondents there was a brief and oral argument by *George A. Bowman, Sr.,* of Milwaukee.

GEHL, J.   The attack upon the contract is made upon two grounds:

(1) Failure to file in the office of the register of deeds a certificate of limited partnership as is required by sec. 124.02 (1), Stats., and (2) failure to disclose in the application for a license to operate the tavern the fact that plaintiff had an interest in the business.

By sec. 124.02 (1), Stats., it is provided that persons desiring to form a limited partnership shall sign and swear to a certificate containing certain matters and file it for record in the office of the register of deeds in the county in which the principal place of business is located. The certificate was not filed. Defendants seem to agree that violation of this provision would not of itself affect the rights of the parties as between themselves, for they make no effort in their brief to meet plaintiff's argument that it does not.

The portion of sec. 176.05 (3), Stats., here applicable, is still found where it was when, and has not been amended since, it was considered in *Brill v. Salzwedel* (1940), 235 Wis. 551, 292 N. W. 908. It provides:

". . . No such license shall be issued to any person acting as agent for or in the employ of another. . . ."

The purpose of the legislature to require the licensing authority to consider the fitness of the person or persons who by its sanction are to engage in the tavern business is expressed in sec. 176.05 (5), Stats., which prescribes that the application for license shall set forth the past history of the applicant and his fitness for license. The interest of the legislature in the character of the person or persons engaged in the business of selling intoxicants is again expressed in sec. 176.05 (9), wherein it is directed that no license shall be granted to a minor, to one not of good moral character, to one who has been a petty law offender or who has been convicted of a felony.

In *Brill v. Salzwedel, supra,* it was held that a partnership agreement by the terms of which plaintiff was to provide the capital and equipment for the operation of a tavern, and defendant was to manage and operate the business and to apply for and obtain a license to operate the business in his sole name, was illegal and unenforceable; that under existing statutes a partnership may not obtain a license for the sale of intoxicating liquors in the name of only one of the partners. Plaintiff seeks to distinguish the facts of the two cases. One significant and controlling fact appears in each of them: The name of one of the partners was, as was contemplated by the partners, withheld from the public and the licensing authority. That, we believe, is sufficient to require us to hold the contract unenforceable. The language of the court in the *Brill Case* makes such conclusion inescapable (p. 558) :

"There is no legal sanction under our law whereby a so-called silent partner can engage in the tavern business in which intoxicating liquors are sold under a license issued in the name of one of the partners. In the case of corporations, full disclosure must be made as to all officers and directors of the corporation. There is an obvious reason for such disclosure. The licensing authorities are entitled to

know the personnel of those directly interested in the business for the operation of which the municipality grants the license. The emphasis is upon the personal qualifications of the licensees and those in control of the liquor business. The latter is clearly indicated in the disclosures required concerning officers and directors of corporations, and the public is entitled to know who is actually in control, both as to *ownership* and management in any branch of the liquor traffic required by law to be licensed.

"A partnership may be granted a license to operate a tavern and sell intoxicating liquors provided the names of the partners are disclosed in both the application for and in the license granted. But it may not, as in the instant case, obtain a license in the name of one of the members of the partnership." See *Smith v. Smith* (1949), 255 Wis. 96, 38 N. W. (2d) 12.

Similar contracts, all dealing with partnerships organized for the purpose of engaging in the liquor business and all contemplating that less than all of the members of the partnership should apply for and accept a license in the applicant's sole name, have been held to be unenforceable in *Nahas v. George* (1951), 156 Ohio St. 52, 99 N. E. (2d) 898, 32 A. L. R. (2d) 1338; *Hooper v. Barranti* (1947), 81 Cal. App. (2d) 570, 184 Pac. (2d) 688; *Price v. Marcus* (1947), 199 Okla. 356, 185 Pac. (2d) 953; *Minter Brothers Co. v. Hochman* (1950), 231 Minn. 156, 42 N. W. (2d) 562; *Pendarvis v. Berry* (1949), 214 S. C. 363, 52 S. E. (2d) 705; *Vandegrift v. Vandegrift* (1910), 226 Pa. 254, 75 Atl. 365; *Parise v. Pepe* (1946), 270 App. Div. 769, 59 N. Y. Supp. (2d) 497; *Orr v. Pfohl* (1948), 84 N. Y. Supp. (2d) 23; *Chippas v. Valltos* (1941), 74 U. S. App. D. C. 338, 123 Fed. (2d) 153; *Smith v. Nix* (1950), 206 Ga. 403, 57 S. E. (2d) 275; *Eisenman v. Seitz* (1942), 26 Del. Ch. 185, 25 Atl. (2d) 496; *DeMayo v. Lyons* (1948), 358 Mo. 646, 216 S. W. (2d) 436; *Beemer v. Hughes* (1914), 179 Mich. 110, 146 N. W. 198.

We read these cases, including *Brill v. Salzwedel, supra,* as giving effect to the legislative purpose to require that the identity of those engaged as profit-sharing partners in the liquor business, whether as managers or as owners, be made known to the public and the licensing authority, and as establishing the rule that contracts such as that here involved and made under like circumstances are void, and that they are unenforceable regardless of which of the parties initiates or suggests the plan, whether the members of the partnership be limited or general, who prepares the contract, who assumes the managerial duties, or what the purposes of the various provisions or omissions of the contract are.

Plaintiff contends that the court's findings that both parties contemplated that the license should be applied for in the name of William J. Meyer, and that the omission in the application to refer to the partnership was made with his consent and approval has no support in the evidence. Plaintiff himself testified that he "never contemplated taking out a license for this tavern business or running the business, at Mr. Meyer's saying it was to be operated under his name only." He testified also that at the meeting at which the contract was prepared the matter of the license was discussed and that "the only thing that was said was he [Meyer] was to retain the license in his name," that in the dealings with the creditors, the public, and the bank the business was to be and was carried on in the name of Meyer, and that when the agreement was made he did not intend to have his name appear in the business. There is ample support for the finding.

The plaintiff urges that it would be unjust and inequitable to allow defendants to appropriate the proceeds of the venture which was enabled to continue only on account of the investment made by him. For the reasons stated in *McMullen v. Hoffman* (1899), 174 U. S. 639, 669, 19 Sup. Ct. 839, 43 L. Ed. 1117, the contention is of no avail to him:

"We must, therefore, come back to the proposition that to permit a recovery in this case is in substance to enforce an illegal contract, and one which is illegal because it is against public policy to permit it to stand. The court refuses to enforce such a contract and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions. To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly toward reducing the number of such transactions to a minimum. The more plainly parties understand that when they enter into contracts of this nature they place themselves outside the protection of the law, so far as that protection consists in aiding them to enforce such contracts, the less inclined will they be to enter into them. In that way the public secures the benefit of a rigid adherence to the law."

Plaintiff contends that the agreement should be treated as being severable, and that he should have an accounting for the operation of the dining-room and bowling-alley business, since the latter were not affected by the application for nor the license. The agreement was made, not to operate three distinct enterprises, but to operate a tavern, bowling alley, and dining room. Although the wants of patrons were to be supplied by different departments of the operation, it is clear from the terms of the contract that it was contemplated that the three departments should be comprised in one venture. The contract is not severable in the sense that we can separate the valid from the invalid portions thereof. The consideration of plaintiff's agreement to supply funds was entire—it contemplated the operation of but one business.

Although plaintiff was denied an accounting he was awarded interest at the legal rate upon the sums advanced by

him computed on the unpaid balance existing from time to time. Defendants have moved for a review of that part of the judgment and also from that part awarding plaintiff costs. The matter of costs was for the discretion of the court, sec. 271.02 (2), Stats. In his memorandum opinion the trial judge stated that the defendants had conceded that plaintiff is entitled to interest upon the $12,000 paid in connection with the July 29, 1949, contract. We assume that interest was computed in accordance with the concession. The record does not disclose nor do defendants contend that no such concession was made. We accept the trial judge's statement as a verity and, consequently, must deny the motion to review.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). I respectfully dissent from the majority opinion holding that the limited partnership agreement entered into between the parties was illegal as being in violation of sec. 176.05 (3), Stats., which provides, ". . . No such license shall be issued to any person acting as agent for or in the employ of another. . . ."

It seems to me that both the trial court and the majority opinion misconstrue the application of this court's holding in *Brill v. Salzwedel* (1940), 235 Wis. 551, 292 N. W. 908, to the facts of this case. Reliance is placed upon the following language of the opinion in that case (p. 558):

"The emphasis is upon the personal qualifications of the licensees and *those in control of the liquor business.* The latter is clearly indicated in the disclosures required concerning officers and directors of corporations, *and the public is entitled to know who is actually in control,* both as to ownership and management in any branch of the liquor traffic required by law to be licensed." (Emphasis supplied.)

The important words in the foregoing quotation are *"who is actually in control,"* and while these are followed by the

words "both as to ownership and management" the same are mentioned only as they relate to control. Ordinarily part ownership in a business carries with it an element of ability to control. However, in the case of a limited partner in a limited partnership, such as existed here, ownership and control are completely and effectively divorced. Sec. 124.07, Stats., provides that if a limited partner takes any part in control of the business of the limited partnership he loses his status as a limited partner and becomes a general partner. Not only is there no evidence in the instant case that plaintiff ever attempted to take part in the control of the business, but the limited partnership agreement contained an express provision prohibiting him from so doing. When this court referred to a *"silent partner"* in its opinion in the *Brill Case,* the context in which such statement appears clearly indicates the reference was to a partner who did have it within his power to exercise control because of his ownership.

The status of the plaintiff in the instant case is very closely akin to that of a creditor. If plaintiff had resorted to an arrangement whereby he simply loaned defendants $12,000 and was to participate in the profits of the business in lieu of interest, under an arrangement similar to that before this court in *Hirsch v. Smith* (1952), 262 Wis. 75, 53 N. W. (2d) 769, there would be no question of any violation of sec. 176.05 (3), Stats. This is essentially that which was done in the instant case, except that the labels "limited partner" and "limited partnership" have been used in the agreement. Why should these labels be determinative of the question of whether plaintiff was in a position to exercise any control of the operation of the business?

I would reverse and remand for an accounting of profits.

I am authorized to state that Mr. Justice STEINLE concurs in this dissent.