STATE OF NORTH DAKOTA, Appellant, v. W. D. GILLESPIE, Respondent.

(168 N. W. 38.)

**Licensed architects — registration — statute — professional architect — right of — not abridged.**

Chapter 58, Session Laws of 1917, which provides for the registration of licensed architects, construed and *held* not to abridge the right of a professional architect to continue to practise his profession as an unlicensed architect.

Opinion filed May 11, 1918.

Appeal from the District Court of Cass County, *A. T. Cole,* J. Affirmed.

*William Langer,* Attorney General, and *A. W. Fowler,* State's Attorney, for appellant.

The statute applying to architects is analagous to the law relating .

---

NOTE.—For a discussion of the question of regulation of architects, see note in 36 L.R.A. (N.S.) 1203, where it was held that a statute was not unconstitutional as granting special privileges and immunities to uncertificated architects, nor as omitting to fix in the act some standard or rule for determining the qualification of applicants.

to boards of health and to regulations promulgated by such boards. Comp. Laws 1913, § 433; Pierce v. Doolittle (Iowa) 106 N. W. 751, 6 L.R.A.(N.S.) 143; Blue v. Beach, 155 Ind. 121, 56 N. E. 89; note in 6 L.R.A.(N.S.) 143.

The defendant, by holding himself out as an architect and by practising such profession, violated the law in that he had failed to obtain license and register as an architect. Ex parte McManus (Cal.) 90 Pac. 703.

This law is not in violation of any constitutional provision. 2 R. C. L. 399; 5 C. J. 255; Ex parte McManus (Cal.) 90 Pac. 702; People v. Loser, 251 Ill. 527; note in 36 L.R.A.(N.S.) 1203.

*Lawrence & Murphy,* for respondent.

The only question before the court is whether or not a citizen of this state may practise architecture without first securing a license, if he does not hold himself out as a licensed or registered architect, as defined by the law. Architecture is primarily a mechanical art, akin to carpentry and other industrial pursuits. 1 Words & Phrases, 490; Wilson & Edwards v. Greenville, 65 S. C. 426, 43 S. E. 966.

The statute is penal in its nature and must be strictly construed, and will not be extended beyond the letter thereof. Folsom v. Kilbourn, 5 N. D. 402, 67 N. W. 291; Rudolph v. Herman, 4 S. D. 283, 56 N. W. 901.

"The controlling effect of sections adopted as parts of laws by amendment has often been recognized and given full effect in cases where the amendment did not signify a specific intent in so pronounced a manner as the one under consideration."

If a section of the act here in question is in conflict with the remainder of the act, it must be subservient to the legislative intention as expressed by the amendments to the original bill. State v. Burr, 16 N. D. 581; Arnett v. State (Ind.) 8 L.R.A.(N.S.) 1192, 80 N. E. 153.

If the act in question has the effect of prohibiting the practice of architecture except by licensed architects, it is unconstitutional. The title of the act is not sufficiently broad to admit of such abridgment of individual rights. It would be regulation but prohibition. Richards v. Boyene, 61 N. J. L. 496, 39 Atl. 708; State v. Ream, 16 Neb. 683, 21 N. W. 398; Miller v. Jones, 80 Ala. 89 (97); Stebbins v.

39 N. D.—33.

Mayr, 38 Kan. 573, 16 Pac. 485; Sedgwick County v. Bailey, 13 Kan. 600; Philpin v. McCarty, 24 Kan. 402; State v. Bankers' Asso. 23 Kan. 501; State v. Barrot, 27 Kan. 213; Railroad Co. v. Long, 27 Kan. 684; People v. Gadway, 61 Mich. 285, 28 N. W. 101; Ex parte Taylor, 38 Am. Rep. 338; Vickburg R. Co. v. State, 62 Miss. 105; Treat v. White, 181 U. S. 264, 45 L. ed. 853; United States v. Isham, 17 Wall. 496, 21 L. ed. 728; Jackson v. Newman, 42 Am. Rep. 367; Tiedeman, Pol. Power § 3; Re Jacobs, 98 N. Y. 108, 50 Am. Rep. 636; People v. Gillson, 109 N. Y. 389, 17 N. E. 343; Cooley, Const. Lim. 6th ed. pp. 606, 607, 744; Ex parte Whitwell, 98 Cal. 73, 19 L.R.A. 727, 32 Pac. 872; Froror v. People, 141 Ill. 171, 16 L.R.A. 492, 31 N. E. 395; Lakeview v. Rose Hill Cemetery Co. 70 Ill. 191, 22 Am. Rep. 71; Ritchie v. People, 155 Ill. 98, 29 L.R.A. 79, 40 N. E. 454; Mugler v. Kansas, 123 U. S. 623, 31 L. ed. 205, 8 Sup. Ct. Rep. 273; Ruhstrat v. People, 49 L.R.A. 184; 1 Watson, Const. p. 603; State ex rel. Goodsill v. Woodmansee, 1 N. D. 246.

A man's labor is property. Labor is the foundation of all other property and is the most inviolable. This statute attempts to provide a means of taking property without due process of law. It is denying the equal protection of the law. Union Slaughter House Co. v. Crescent City Co. 111 U. S. 746, 28 L. ed. 585; 1 Smith, Wealth of Nations, chap. 10; Allgeyer v. Louisiana, 165 U. S. 578, 41 L. ed. 832; Re Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; State ex rel. Ritchey v. Smith (Wash.) 5 L.R.A.(N.S.) 674, 84 Pac. 85.

BIRDZELL, J. This is an appeal from an order of the district court of Cass county sustaining a demurrer to an information.

The defendant was arrested under an information charging the commission of an offense in violation of chapter 58, Session Laws of 1917, which provides for the registration of licensed architects. The alleged offense consisted in the failure and refusal of the defendant to become licensed as an architect, and in practising architecture at Fargo, North Dakota, between July 1, 1917, and March 28, 1918, without being licensed, contrary to the statute and the rules and regulations of the state board of architecture. The information alleges that the defendant, between the times mentioned, has continued to practise as an architect in the city of Fargo, and has held himself out to be an archi-

tect qualified to practise as such, and has made plans and specifications as an architect between such times, particularly for public school buildings and otherwise.

Inasmuch as the argument of the defendant and respondent goes to the question of the construction of the statute above referred to and to its constitutionality, a proper determination of the questions involved requires the consideration of the respondent's arguments as affirmative propositions. The respondent contends: (1) That the legislative intent to prohibit the practice of architecture by unlicensed architects is not clear, and that, as the statute is penal and harsh in its operation, it should be given a strict construction that would render it inapplicable to such architects; (2) that the act cannot be construed as applying to unlicensed architects for the reason that such a construction would (a) render the act broader than its title, and (b) render the act unconstitutional as embracing a multiplicity of subjects; and (3) that the act is unconstitutional in that the prohibition of the practice of the lawful calling of the defendant is not a proper exercise of the police power, and involves an interference with the liberty of the defendant as guaranteed by the Constitution of the state and by the 14th Amendment to the Federal Constitution.

If the first proposition advanced by the respondent is correct, it will obviously be both unnecessary and improper to consider the remaining questions. If, under a correct interpretation of the act, it is found to be not applicable to an unlicensed architect, and if there be no restrictions placed upon the practice of the profession by one who has not secured a license, the respondent would be in no way affected by the act, and consequently would not be in a position to assail its constitutionality. If, however, the act, when properly construed, is found to in any way interfere with the respondent in carrying on his professional activities, it will be necessary to consider the constitutional basis for the legislation so affecting him.

It is claimed that the legislative history of the act shows that it was the intention to provide for the classification of architects into licensed and unlicensed groups, and to make provisions whereby any architect desiring to become licensed could do so upon fulfilling the requirements of the law as administered by the state board of architecture. Anyone not desiring to become a licensed architect, however, it is con-

tended, might continue to practise his profession, and would be precluded only from holding himself out as a licensed architect.

The title of the act as originally introduced was: "A Bill for an Act Providing for the Registration of Architects and for Regulating the Practice of Architecture as a Profession in the State of North Dakota." There can be no doubt that, as originally drawn, the bill was intended to prohibit the practice of architecture as a profession by all persons who did not become registered under the terms of the act. The term "license" or "licensed" appears nowhere in the bill as originally introduced, and there is nothing in any of its provisions affording evidence of an intention to classify architects into licensed and unlicensed groups. The prohibitory provision of the original bill was as follows: (§ 15) "No person shall begin to use the title 'architect' or any variation of the same, or any other words, letters, or device to indicate that the person using the same is an architect, after the approval of this act, without being registered as an architect, in accordance with the provisions of this act."

The basis for the contention that the legislature desired only to provide a means whereby those desiring to become licensed under the provisions of the act could do so by their own voluntary action and thus obtain the right to practise the profession under a designation differing from that permitted to unlicensed architects is found in the amendments which were made during the course of the legislative procedure. Some minor amendments were made, changing the membership of the board from five to three members; making appropriate changes in the terms of office, so that one member would be appointed every two years; altering the preliminary educational requirements; shortening the period of residence and practice, as a prerequisite to registration without examination; changing the renewal license fee, and reducing the penalty for violation. Aside from the foregoing minor amendments, none of which reflect the intention of the legislature bearing upon the question in hand, the title and §§ 15, 19, and 30 were changed by the insertion of the word "licensed" before the word "architect," where the latter word appeared therein. The title of the act as finally adopted reads: "A Bill for an Act Providing for the Registration of *Licensed* Architects and for Regulating the Practice of Architecture as a Profession in the State of North Dakota."

The prohibitory clause, § 15, as finally adopted, reads: "No person shall begin to use the title 'Licensed Architect' or any variation of the same, or any other words, letters or device to indicate that the person using the same is a licensed architect, after the approval of this act, without being registered as an architect in accordance with the provisions of this act." Section 19 as finally passed is as follows: "In case of a copartnership of licensed architects, each member must hold a certificate of practice." Section 30 of the act reads: "Every registered licensed architect shall, within thirty days, record his certificate of registration with the secretary of state of North Dakota, who shall provide a special book for such purpose." It will thus be seen that the title of the act, the prohibitory section, and the two cognate sections referred to, show an intention to provide for the registration of licensed architects and to prohibit persons from using the title "Licensed Architect" without becoming registered in the manner provided. But the remainder of the title and other provisions of the act, which have undergone no change since the bill was originally introduced, purport to relate to the regulation of the practice of architecture as a profession. Thus, in § 6 the board is authorized to adopt rules and regulations "for the regulation of the practice of architecture," and in § 8 it is made its duty to examine into the qualifications of, to register, and issue certificates of registration to those desiring to use the title of architect or to practise as architects. Section 16 is a legislative construction of the prohibitory section immediately preceding, which renders it inapplicable to persons who may desire to make plans and specifications for their own buildings. This section, it will be observed, would manifestly serve no purpose except as a part of an act designed to prohibit the practice of architecture by unlicensed persons. Section 32 provides that "every architect who is registered under the provisions of this act, and who desires to continue to practise architecture in North Dakota, shall annually during the month of July pay to the secretary of the board a renewal fee of ten dollars."

To what extent can it be said that the foregoing sections are intended to regulate the practice of architecture as a profession by those who are unlicensed? In determining this question, we must, of course, be guided by the legislative intention so far as it can be gathered from the act, and from the legislative history of the bill. In arriving at this

intention we must first seek to determine the underlying principle of the amendments that were made, so as to give effect to the purpose to be served by the amendments. If the amendments made reflect a different legislative policy from that stated in the original bill, it is the duty of the court, in construing all sections of doubtful meaning, so far as possible, to give to them an interpretation which will be consistent with the general policy of the amendments in order that the prime legislative purpose may not be thwarted.

At the outset it must be conceded that the various sections of the act are not wholly consistent with each other, and that this is due to the amendments that were made; but in construing the whole law we must take cognizance of the common errors which creep into legislation by reason of the manner in which legislatures are carried on. To quote again the language of the Indiana court in the case of Arnett v. State, 168 Ind. 180, 8 L.R.A.(N.S.) 1192, 80 N. E. 153, which has previously met the sanction of this court (State ex rel. Erickson v. Burr, 16 N. D. 581–593, 113 N. W. 705): "It is easy to understand how in the hurry of legislation there may be a failure, in connection with the adoption of an amendment, carefully to eliminate provisions which are really intended to be superseded . . . ." In the legislative history of the act in question we have most satisfactory evidence of a desire to depart from the policy evidenced by the original bill. From what has been said with reference to the amendments, it can be readily seen that there were no amendments going to the policy of the legislation, except those which were made by the insertion of the qualifying term "licensed" before the word "architect" in the various sections referred to. Had the bill remained as originally introduced, there could be no question that the practice of architecture without a license would have been an offense, and that there would have been no basis for any contention that the legislature contemplated merely a classification of professional architects as licensed and unlicensed architects.

The act as amended (§ 15) only prohibits, in express terms, those who are not licensed from representing that they are licensed. There is no express prohibition of the practice of architecture by an unlicensed person. The prohibitory section may properly be looked to as the best index of the legislative intention, since without it none of the remaining provisions could be rendered effective. It is for a viola-

tion of this section that punishment is imposed, and it is by virtue of its provisions, if at all, that one is restrained from doing that which before the enactment was perfectly lawful. It is elementary that such a provision should not be enlarged by construction. Especially should this elementary principle be controlling where, as here, there is no clause in the remainder of the act that will be rendered wholly ineffective if the literal interpretation of the section in question is adopted.

It is argued that the failure to amend § 8 by the insertion of the qualifying word "licensed" before the word "architect" evidences an intention on the part of the legislature to place unlicensed architects under the jurisdiction of the state board of architecture. Section 8 makes it the duty of the board to "examine into the qualifications of, register, and issue certificates of registration to those desiring to use the title of architect or to practise as architects in the state of North Dakota, and who have met the requirements of the board according to the provisions of this act." It must be conceded that there is considerable force in this argument, but the intention of the legislature is not to be gathered from one unimportant section of the act; and especially is this true where the literal interpretation of the particular section gives a meaning contrary to that expressed in sections which have been carefully amended in pursuance of an apparently different plan. There seems to be no power of authority conferred by § 8 that would not be vested in the board under the other provisions of the act, and in a sense the entire section is surplusage. If the act is read, admitting this section, it would be perfectly clear that the legislature had left it entirely at the option of the architect whether or not he would become licensed by the state board. In the absence of any provision in the law prescribing a license as a prerequisite to the practice of architecture, and of any provision penalizing the practice of the profession without a license, we would not be warranted in holding that the failure to amend § 8, so as to make it consistent with the amendments to other sections heretofore referred to, discloses an intention to preclude unlicensed architects from practising their profession.

Again, it is contended that, unless the act is construed to prohibit the practice by unlicensed persons, § 32 would be necessarily unconsti-

tutional in that it arbitrarily discriminates against those who have been once licensed and who fail to renew their license. According to the literal interpretation of § 32, every architect who is registered and who desires to continue to practise architecture in the state is required to pay an annual renewal fee of $10. Obviously, this section does not refer to those who do not choose to become registered, and are consequently to be permitted to continue the practice of architecture without the payment of any fee, but, it is contended, if one becomes registered, he cannot practice for a longer period than a year unless he will pay a renewal fee of $10. In brief, the argument is that any architect who becomes registered must, as a condition to being allowed to continue in practice, pay an annual fee or tax of $10, which charge is wholly on account of the initial registration; whereas those who do not register are permitted to continue to practise without a charge. This would seem to involve an arbitrary classification and if such were the necessary effect of the section in question, it would be the duty of this court to so construe the entire act, if possible, as to render it constitutional. To do this, we might be required to hold that the legislature intended to prohibit unlicensed persons from practising; but it seems to us that the more reasonable construction of § 32 is that, it was only intended to prohibit *licensed* architects from continuing to practise *as licensed* architects unless they pay the annual renewal fee. This section only comprehended registered architects; and, since it was dealing with a limited class which had become distinguished from architects generally only by the fact of being licensed and registered as such, it is more reasonable to assume that the legislature intended only to impose the renewal fee as a condition of remaining in that class, than it is to assume that they intended to prohibit further practice entirely. It is as though the section read: "Every architect who is registered under the provisions of this act, and who desires to continue to practise architecture [as a licensed architect] in North Dakota, shall annually during the month of July pay to the secretary of the board a renewal fee of $10.

In so construing the above section, we are again mindful of the change in the entire policy of the legislation as evidenced by the amendments, and of the failure of the legislature to make its intention clear and unmistakable, due to the common imperfections in legislative pro-

cedure. As the bill originally stood, it was doubtless contemplated that no architect should be permitted to practise without a license, and, unless the amendments were intended to provide a means of voluntary classification of the profession into licensed and unlicensed groups, it is difficult to see their purpose.

In adopting the above construction of the act in question, it is proper to remark here that the legislature which passed the act was not without precedent for its action in authorizing a classification of a profession into licensed and unlicensed groups. The immediately preceding legislature of 1915 passed a somewhat similar act (Sess. Laws 1915, chap. 236), creating a board of nurse examiners and providing for the registration of licensed nurses who would be known as registered nurses, while at the same time excepting from the operation of the law all practical or trained nurses not pretending to be registered. It might also be remarked that both bills were introduced by the same author.

Since the act in question contains no provision in any way abridging the right of the defendant and respondent to practise his profession, the foregoing considerations require that the order of the trial court sustaining the demurrer to the information be affirmed. It is therefore unnecessary to consider the other questions urged by the respondent. The order appealed from is affirmed.

ROBINSON, J. (concurring). In this case the complaint charges defendant with the offense of doing business as an architect without first having obtained a license contrary to chap. 58, Laws of 1917. It avers that at Fargo, defendant maintains an office and place of business, and employs skilful draftsmen and follows the business of an architect, without first having obtained a license. The case comes to this court on an appeal from an order sustaining a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a public offense. The title of the statute is: "An Act Providing for the Registration of 'Licensed Architects,' and for Regulating the Business of Architecture as a Profession."

The act provides for a state board of architecture, and that no person shall begin to use the title "Licensed Architect" without being registered as architect, and that any violation of the act is a misdemeanor

punishable by fine of from $50 to $200. The act is penal and must be given a strict construction. It does not in any way declare it a misdemeanor for a person to follow the business of an architect without first having obtained a license. It applies only to persons using the title "Licensed Architect." As there is no charge that defendant ever used that title, the complaint does not charge him with a public offense.

Of course it is contended that by fair intendment the statute applies to all architects. But such is not the letter of the statute. To obtain a license to do business under the statute, the architect must apply for registration and pay the board an application fee of $10, a certificate fee of $25, and annual fee of $10, and pay the expense of recording the certificate in the office of the secretary of state. While such an occupation tax may be well enough for those who choose to pose as "licensed architects" and to enjoy the benefits and the privileges of the statute, yet, if it were extended to all architects, the statute would be clearly void. The Constitution provides for a tax on property—not on men or on industry—sufficient to pay the necessary and limited expenses of the state.

Then by § 174 it is provided: The legislative assembly shall provide for raising revenue sufficient to defray the expenses of the state for each year, not exceeding 4 mills on the dollar, of the assessed valuation of all property, and also a sufficient sum to pay interest on the state debt.

Section 180: The legislative assembly may provide for the levying of an annual poll tax of not more than $1.50 on each male person over twenty years and under fifty years. Under the Constitution all laws of a general nature must have a uniform application.

The subject of every act must be expressed in its title. Every law imposing a tax must state distinctly the object of the tax to which only it shall be applied. Every person has a right to acquire, possess, and protect property, and to pursue and obtain safety and happiness. These provisions are all contravened by the act in question. It is not of uniform application. It does not apply to all persons of the same class. It applies only to a person using a certain title. Excepting the limited poll tax, the legislature has no right to levy a head tax or occupation tax. Every person is entitled to acquire and possess and

protect property, and to pursue and obtain safety and happiness, and for that purpose to follow any honest occupation without paying a tax for the privilege of doing it. Were it competent for the lawmakers to impose an occupation tax of $10 annually, why not $100 or $1,000? Even such a tax as imposed by the statute in question might well bar a poor and competent architect from the acquisition of property and the pursuit of safety and happiness.

· While the statute is clearly void, it is equally clear that the complaint does not state facts sufficient to charge an offense against the statute.

Order affirmed.