## MINTER BROTHERS COMPANY v. ABRAHAM J. HOCHMAN AND OTHERS.[1]

May 5, 1950.

No. 35,130.

*Moonan, Heinen & Lindmeyer,* for appellant.
*Leonard, Street & Deinard,* for respondents.

MAGNEY, JUSTICE.

Demurrers to the complaint on the ground that the same failed to state facts sufficient to constitute a cause of action were sustained. Plaintiff appeals.

[1]Reported in 42 N. W. (2d) 562.

The complaint sets out that plaintiff possessed the required state and federal licenses and permits to engage in the wholesaling of intoxicating liquors and wines; that defendants were engaged in the business of acting as representatives of rectifiers, distillers, wineries, and importers of wines and intoxicating liquors in Minneapolis; that they represented themselves as experienced in the business of the purchase and sale of wines and intoxicating liquors and were familiar with the kind of wines and liquors that would be readily and promptly resalable; that they were familiar with the market on the purchase of such merchandise from distillers, rectifiers, wineries, and importers and the resale thereof to the retailers throughout the area; that on or about April 1, 1946, plaintiff and defendants entered into a "contract, agreement and joint adventure"; that by the terms of this agreement defendants were to purchase wines and intoxicating liquors from rectifiers, distillers, importers, and wineries to the account of plaintiff to be later resold by defendants in plaintiff's name; that defendants would, for said joint adventure and parties to the agreement, because of their skill and knowledge of intoxicating liquors and wines, purchase intoxicating liquors and wines for plaintiff under the joint adventure; that they would charge the regular commission therefor and credit the same to the joint adventure, plaintiff to receive one-half of the commissions and defendants the other half; that, in accordance with "said contract, agreement and joint adventure," the merchandise was stored in the warehouse of plaintiff to be packaged and shipped to the places where the same was sold by defendants for plaintiff, and the expense of handling, storing, and shipping was to be borne by plaintiff; that defendants were to sell the same promptly and without any charge or commission for selling the same; that the net profits or losses, after the payment of operating expenses, were to be divided equally between plaintiff and defendants; that at stated periods an accounting was to be made by the parties; that said accounts were from time to time made in accordance with the agreement which disclosed either the net profits or losses, which were for

some time accepted and assumed by all the parties to said "joint adventure"; that said joint adventure continued to operate from April 1, 1946, to January 1, 1949; that defendants' representations that they were familiar with and experienced in the sale of wines and intoxicating liquors and the kind that would be readily and promptly resalable were false and untrue; that plaintiff suffered damages as a result thereof; that defendants purchased unfamiliar and unpopular brands—sometimes worthless wines and liquors— with intent to defraud plaintiff; that as a result defendants were unable to sell the same, forcing upon plaintiff a huge stock of unfamiliar and unpopular wines and liquors, which plaintiff was unable to dispose of except at a great loss after defendants refused to sell the same in accordance with the agreement; that, in order to salvage the losses on said liquors and wines so acquired, it was necessary for plaintiff to sell same at a great loss; that on account and by reason thereof, plaintiff sustained damages in the sum of $57,000, and that, pursuant to said agreement, contract, and joint adventure, plaintiff was obliged to incur an expense in excess of $60,000 in said operation after defendants breached said contract in refusing to sell the wines and liquors so acquired by said joint adventure.

Plaintiff prayed judgment against defendants (1) that said joint adventure be adjudged dissolved and that an accounting be had; (2) that the court determine the amount which is due plaintiff on such accounting for loss of profits and that the defendants be decreed to pay such amount to plaintiff; (3) for the sum of $58,500, being for one-half of the losses sustained by plaintiff in disposing of the unpopular and unfamiliar brands of intoxicating liquors and wines purchased by defendants for said joint adventure in violation of their contract, agreement, and joint adventure.

Defendants demurred to the complaint, and, as stated, the demurrers were sustained.

In simple and condensed language, plaintiff and defendants, according to the complaint, agreed that they would go into the wholesale liquor business on terms as follows: First, that defendants

would purchase wines and intoxicating liquors from rectifiers, distillers, wineries, and importers, and that the parties would share equally the commissions which defendants would receive from the sellers; and, second, that such liquors would be purchased in the name of plaintiff and be stored, handled, and shipped out by plaintiff, that defendants would sell same to retailers, and that the net profits and losses after payment of operating expenses would be divided equally between plaintiff and defendants.

In the complaint and in its brief, plaintiff refers to the agreement between the parties as an agreement for a joint adventure. At the oral argument before this court, plaintiff claimed that it was one of agency. If a principal and agency relationship existed here, the argument is that the licenses and permits which plaintiff possessed were a sufficient compliance with the statutes. The only compensation which defendants were to receive, according to the complaint, for their part in the operation of the business was one-half the commissions received from the purchase of the wine and liquor supplies and one-half the profits of the business, if there were any. If there were no profits, the complaint states that defendants would share the losses equally with plaintiff. As to the commissions, there could of course be no losses. Under such a pleaded arrangement, we are unable to see how the relationship between plaintiff and defendants can be considered one of principal and agent.

It is plain that plaintiff and defendants agreed to go into the wholesale liquor business together. Plaintiff possessed the requisite state and federal licenses and permits to engage in the wholesale liquor business for itself. As a joint business enterprise, plaintiff and defendants did not possess such licenses or permits. Plaintiff contends that, since it as a corporation had secured and possessed all necessary licenses and permits, state and federal, to engage in the wholesale liquor business, such licenses and permits were in compliance with statutory requirements and sufficient to cover the business in which plaintiff and defendants were

jointly engaged, and that therefore its cause of action is not based on illegal transactions.

The statutes involved are M. S. A. 340.11, subd. 1, which provides in part:

"It shall be unlawful for any person, directly or indirectly, upon any pretense or by any devise [*sic*], to manufacture, import, sell, exchange, barter, dispose of, or keep for sale any intoxicating liquor without first having obtained a license therefor, as herein provided."

Section 340.07, subd. 1, which reads in part:

"* * * The term 'wholesaler' means any person engaged in the business of selling intoxicating liquor to retail dealers. The term 'person' includes the meaning extended thereto by section 645.44, subdivision 6."

Section 645.44, subd. 6, which defines "person" as follows:

"The word 'person' may extend and be applied to bodies politic and corporate, and *to partnerships and other unincorporated associations.*" (Italics supplied.)

And § 340.12, which provides in part:

"* * * All applicants for * * * wholesaler's licenses * * * shall file with the liquor control commissioner a bond with corporate surety, to be approved by the * * * commissioner, before granting such license, or, * * * cash or * * * bonds in the sum of $10,000, * * * payable to the State * * *."

The federal statutes applicable are 27 USCA, § 203:

"(c) It shall be unlawful, except pursuant to a basic permit issued under this chapter by the Secretary of the Treasury—

"(1) to engage in the business of purchasing for resale at wholesale distilled spirits, wine, * * *."

and § 204, which specifies different classes of persons to whom permits may issue. Section 211(3) defines "person" as meaning "individual, partnership, joint stock company, business trust, as-

sociation, corporation, *or other form of business enterprise,* * * *." (Italics supplied.) Both federal and state statutes provide for a penalty in case of violation. M. S. A. 340.19(5) ; 27 USCA, § 207.

It is apparent from the reading of the complaint that the arrangement which plaintiff pleads possesses essentials characteristic of a partnership. If it is a partnership, it is obvious, both under the state and federal statutes set out above, that it was required to acquire the licenses provided for therein. If it is an "unincorporated association," the term used in the Minnesota statute, or "association, * * * or other form of business enterprise," the expression used in the federal statute, then it would also be required to possess the necessary license or permit to do the business in which it was engaged. It is plain to us that if it was not a partnership it was an "unincorporated association" and an "association, * * * or other form of business enterprise." In its complaint, plaintiff designates the activity of the business enterprise as a joint adventure. Whether it be considered a partnership, an "unincorporated association," and "association, * * * or other form of business enterprise," the designations used in the statutes, or a joint adventure, as plaintiff characterizes it, the nature of the business in which it was engaged, namely, the wholesale liquor business, necessitated the obtaining of a basic permit from the federal government and a license from the state. By failing to acquire this permit and license, it engaged in business illegally.

The question then arises whether, because of the illegality of the business engaged in, one of the parties interested in the business may successfully bring an action such as here attempted against the other party. If he cannot bring such an action, the trial court was right in sustaining the demurrers.

Plaintiff does not seriously contend that if the business in which plaintiff and defendants were jointly engaged requires a permit and license it may maintain the present action. Its contention is that the action is not based on an illegal contract.

In Solomon v. Dreschler, 4 Minn. 197 (278), plaintiff, who had no license to sell intoxicating liquor, brought action to recover

for liquor sold to defendant. He was denied recovery on the ground that in the opinion of the court a violation of the particular act involved was an act *contra bonos mores,* and that a court of justice should not lend its aid to help a party to enforce a contract thus tainted. The court said (4 Minn. 200 [281]) :

"It is quite clear that this act has in view more than the mere raising of revenue. If it had not, it would have been sufficient to have provided for a license at a stipulated sum, and imposed a penalty for selling without one. The bond and its conditions clearly indicate that the object of the act is, in the main, to protect the public against the evils which are generally supposed to result from the unrestrained traffic in spirituous liquors, and that the revenue is merely an incident."

So in this case, the statute provided for a license. It also required the wholesaler of liquor to furnish a bond. This indicates, as stated in the Solomon case, *supra,* that the requirement of a license to engage in the wholesale liquor business was not for mere revenue-raising purposes.

In Brimhall v. Van Campen, 8 Minn. 1 at p. 5 (13 at p. 22), 82 Am. D. 118, the Solomon case was commented upon in the following language:

"* * * We held that the proper rule is to 'examine the statute as a whole, and find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so,' and under this rule we decided that liquor sold in violation of the license act could not be recovered for, because the act evidently was designed to protect the public morals, as well as to add to the public revenue."

The instant action is based on the violation of a contract which provided for and involved transactions prohibited by statute on the ground of public policy. In such a situation, no relief can be given one party against another party *in pari delicto* in respect to a transaction or transactions tainted with such illegality. Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1; 23 L. R. A. (N. S.)

510, 17 Ann. Cas. 687; Pye v. Grunert, 201 Minn. 191, 275 N. W. 615, 276 N. W. 221; 2 Dunnell, Dig. & Supp. § 1870.

In the recent case of In re Estate of Peterson, 230 Minn. 478, 42 N. W. (2d) 59, the question of the validity or invalidity of a contract executed in violation of statute which imposes a prohibition and a penalty for the doing of an act was fully discussed. In that case, we held that, although the general rule is that a contract executed in violation of statute which imposes a prohibition and a penalty for the doing of an act—such as the pursuit of an occupation, business, or profession without being possessed of a license as required by law for the protection of the public—is void, such rule is not to be applied in any particular case without first examining the statute as a whole to find out whether or not the legislature so intended. This court has already passed upon the question in situations similar to the one here involved and has refused to lend its hand to help a party to enforce such a contract. Solomon v. Dreschler, 4 Minn. 197 (278), and Brimhall v. Van Campen, 8 Minn. 1 (13), both *supra*.

Order affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.