**Nick RESSLER, Plaintiff and Respondent,**

**v.**

**P. S. NIELSEN and First Federal Savings and Loan Association of Bismarck, North Dakota, Defendants and Appellants.**

No. 7525.

Supreme Court of North Dakota.

March 29, 1956.

Thomas W. Nielsen, Bismarck, John A. Zuger and Elver T. Pearson, Bismarck, on the brief, for appellant.

Higgins & Donahue, Bismarck, for respondent.

SATHRE, Judge.

The plaintiff brings this action against the defendant to recover commissions claimed to be earned for the preparation of plans and specifications and supervision of the construction of a building belonging to the defendant located at Bismarck, North Dakota, known as the Admiral Hotel. The complaint alleges that the plaintiff is an architect and during the month of April 1948 he entered into an oral agreement with the defendant by the terms of which the plaintiff agreed to draw plans and specifications for a hotel building known as the Admiral Hotel located on lot 19, block 44, original plat of the City of Bismarck, North Dakota, and to supervise the construction of said building, and that plaintiff's commission was to be 5% of the cost of the building. After the work of supervision and construction had continued for some time the parties entered into another oral agreement whereby it was agreed that thereafter the defendant would take over supervision of the construction of the building and that from there on the commission of the plaintiff as architect should be reduced to 3% of the remaining cost of the construction. The complaint alleges that during the time that plaintiff supervised the building there was expended thereon the total sum of $16,250. It is then alleged that the remaining cost of the building was $62,000, and that the plaintiff was entitled to 3% commission upon said sum. The complaint then alleges that the said amount has not been paid except the sum of $500 and that there is still due and owing to the plaintiff the sum of $2,172.

Plaintiff then demands judgment for said amount and that he be adjudged and decreed to have a lien upon the said building described in the complaint which lien was to be junior and inferior to the mortgage to the defendant First Federal Savings & Loan Association and that it be decreed that said premises be sold by the sheriff of said Burleigh County according to law and that from the proceeds of said sale and after deducting costs and expenses the plaintiff be paid the amount aforesaid and that he may become a purchaser at any such sale.

The answer denies generally the allegations in plaintiff's complaint. It alleges that

after certain material had been ordered, it became apparent that the plaintiff was not qualified to supervise the construction of the building; that the parties then entered into an oral agreement or contract whereby the plaintiff was to receive only 3% commission for his services for drawing suitable plans and specifications; that the total cost of such building was $70,000, and that the plaintiff's fees for services, if such services had been competently performed, would have been $2,100; that the defendant has paid $500 upon the claim of the plaintiff.

As a further answer and by way of counterclaim it is alleged that the drawings, plans and specifications prepared by the plaintiff were carelessly, negligently and incompetently drawn and prepared; that the defendant in relying upon plaintiff's representation was greatly damaged in the construction of his building, all because of the negligence, incompetence and lack of knowledge and skill of plaintiff in preparing and drawing the plans and specifications for the building. The answer then alleges the following items of damages as a counterclaim:

The dimensions of the elevator pit were not specified, and that it became necessary to dig a pit by hand at an additional cost to defendant in the sum of $551.

That the specifications placed certain water pipes in the ventilating system causing them to freeze and burst at a replacement cost to defendant of $1,000.

That certain copper steam pipes were laid under the cement floor in the basement of the building and that some of said pipes became leaky, and that defendant has been advised that said pipes have to be abandoned or new pipes installed at a cost of $1,200.

That the window grates for the basement windows did not fit, and that the cost of repairing same will be $100.

That the radiators in the lobby of the hotel were placed near the plate glass windows so that the cold on the outside and the heat on the inside caused said windows to break resulting in damage to defendant in the sum of $546.

That the electrician followed plaintiff's plans and specifications in placing the lights in the hall of the building in wrong places, requiring defendant to relocate them at a cost of $200.

That plaintiff had made incorrect measurements of certain granite blocks, making it necessary for defendant to make two trips to St. Cloud, Minnesota, for the purpose of recutting said granite blocks at a cost of $200.

That the total of said items is in the sum of $3,597 which defendant claims as a counterclaim.

Plaintiff's reply to the defendant's counterclaim denies expressly any negligence or lack of competence on his part in any way in drawing the plans and specifications or in the supervision of said building, and denies specifically that the defendant suffered any loss or damage whatsoever due to plaintiff's fault, negligence or incompetence or carelessness.

The case was tried in the district court of Burleigh County, North Dakota, before the Hon. Geo. Thom, Jr., district judge, without a jury. The district court found for the plaintiff and held that there were two oral contracts; that the parties first agreed that the plaintiff was to be paid a commission of 5% on the cost of the building as compensation for drawing the plans and specifications and supervising the construction thereof. The parties then entered into a second oral agreement or contract whereby it was agreed that the defendant himself would supervise the construction and that the plaintiff was to be allowed 3% commission on the remainder of the cost of the building. The district court found that while the plaintiff was supervising the construction of the building there was expended thereon the sum of $9,707 for which the plaintiff was entitled to a commission of 5%. That trial court further found that the remainder of the cost of the building, the construction of which was supervised by the defendant

himself, was in the sum of $60,292 for which the plaintiff was allowed a commission of 3%. The total amount of commission earned by the plaintiff under said oral agreement was the sum of $2,294 of which $500 had been paid, leaving a balance due the plaintiff in the sum of $1,794. The district court disallowed the items of the counterclaim of the defendant, except the item of cutting of the granite blocks for which it allowed the defendant the sum of $100 leaving a balance due the plaintiff of $1,694.

It is stipulated by the parties that the plaintiff had duly filed a mechanic's lien for the amount claimed to be due from the defendant and a copy thereof was admitted in evidence as plaintiff's exhibit 5.

Judgment was entered in favor of the plaintiff in the sum of $1,694 and interest and for foreclosure of plaintiff's mechanic's lien upon lot 19, block 44, original plat of the City of Bismarck, North Dakota, but said judgment was made subordinate to the mortgage of the defendant First Federal Savings & Loan Association of Bismarck, North Dakota. The defendant appealed from the judgment and demanded a trial de novo.

It is undisputed that plaintiff is an architect and that he had studied architectural engineering at the agricultural college at Fargo, North Dakota, for three years and that the last year he was there was in 1904. He then went to St. Paul where he took a business course for nearly two years and also worked in the office of Buchner & Ord Architects. These architects were engaged mostly in courthouse architecture or the construction of courthouses. He worked for said architects as a draftsman. After leaving St. Paul he went to Mandan, North Dakota, where he was engaged in his profession as architect and builder. While practicing his profession at Mandan he designed and built several business places, residences and churches. He also built a combination church and school, near Dickinson known as the New Hradec. Among other buildings that he designed were two banks, the Baptist Old People's Home at Bismarck, and a number of business buildings and residences in Bismarck and elsewhere in the State of North Dakota.

Mr. Harry A. Thompson, a plumber of Bismarck, North Dakota, testifying for the plaintiff stated that he did some plumbing work on the Admiral Hotel and that he had occasion to examine the plans and specifications prepared by the plaintiff; that they were competently drawn and in accordance with known and accepted practice.

H. M. Leonhard called as a witness for the plaintiff testified that he is a professional architect located in Bismarck, North Dakota, and that he has practiced architecture since 1921. He was acquainted with the plaintiff and was at one time associated with him in the practice of architecture. They at that time had their office in Mandan, North Dakota. He testified that it was a known and accepted practice to prescribe so called wet returns from steam heating systems to be laid under basement floors where it was desired to finish rooms for occupancy in basements of hotel buildings; that it was common practice to lay pipes in floor slabs as a part of radiant heating systems which are used in recent years; that it was common and accepted building practice to locate steam radiators under large plate glass windows in hotel lobbies; that radiators were placed in such places principally to change the air and to induce the circulation of the air. He had occasion from time to time to see plans and specifications drawn by the plaintiff, Mr. Ressler, for the construction of buildings and he would state from his observation that these plans were drawn according to accepted practice and in a competent manner.

With reference to the breakage of the window glass in the lobby the plaintiff testified that he specified single sheet double glazed glass, whereas the defendant in supervising the building himself made a change and installed what is called twindows or thermopanes; that the thermopanes or twindows were more sensitive to heat and cold and sudden changes of temperature than the double glazed win-

dows specified by plaintiff. It is not denied that defendant installed twindows or thermopanes instead of the type of windows specified in the plans and specifications prepared by the plaintiff.

There is some dispute in the evidence with reference to an elevator pit. In the plans and specifications the words "elevator pit" appear but it does not give the dimensions. The contractor in excavating for the basement moved his equipment without making inquiry concerning the elevator pit although it was indicated on the plans at the bottom of the elevator shaft, "elevator pit". Because the excavation equipment had been moved the elevator pit was dug by hand, at an additional cost of $551. He contends that plaintiff was responsible for same because he had not specified the dimensions of the pit in the plans. The trial court, however, held that the fact that the words "elevator pit" appearing in the plans and specifications was sufficient notice to put the contractor on inquiry, and the pit could have been excavated with much less expense with the excavating equipment before it was moved away.

Plaintiff's exhibit 1, the specifications prepared by the plaintiff page 1, contains the following provisions:

"The contractor in making up his bid, shall examine the drawings, the entire contents of the specifications prepared for the work, and building site to make himself thoroughly familiar with all the requirements. If he should need further information, or in his opinion discover any errors, he shall get such information from the Architect before making up his bid, as no additions to the contract price will be allowed after bids have been submitted and accepted. Specifications and drawings are intended to cooperate and should the drawings omit to illustrate the work herein specified, or should the drawings show any part of the work that is not particularly mentioned in the specifications, the same shall be held to be a part of the work notwithstanding such omission."

Paragraph 8, page 3 of plaintiff's exhibit 1, provides:

"In case of any doubt or differences of opinion as to the true intent of the drawings and specifications, the Architect must be notified at once, and his decision shall be final and binding on both parties in the contract."

Neither the contractor nor the defendant consulted with the plaintiff in regard to the matters complained of as required by the quoted parts of the specifications. Had they done so their complaints could undoubtedly have been adjusted without any difficulty.

With reference to the claim of the defendant that the electric lights in the hall of the building were not correctly located, Carl Flurer, an electrician and a witness for the defendant testified that he installed the lights as specified in the plans prepared by the plaintiff. However, the defendant later had some of those lights moved at an additional expense of $200; but it is not shown that the plaintiff was consulted with reference to the location of the lights or that the lights as installed according to the architect's specifications did not provide sufficient light for the hall in which they were placed.

It is admitted that the plaintiff had made a mistake in the measurement of the granite slabs and that it was necessary to return them to St. Cloud, Minnesota, and have them recut to the correct size. The defendant traveled by car to St. Cloud and twice had the slabs recut to proper size, and claims an expense of $200. The plaintiff testified that he would have had the slabs recut without expense to the defendant and that it was not necessary for the defendant to travel by car to St. Cloud to have the recutting done.

The trial court held that the defendant was entitled to $100 since the recutting of the slabs was due to an error of the plaintiff.

The claim of $100 for faulty window grates for the basement was withdrawn by stipulation of the parties and is not an issue in the case.

In 3 Am.Jur. Architects, Section 7, page 1001 it is stated:

"The architect's undertaking, however, in the absence of a special agreement, does not imply or guarantee a perfect plan or satisfactory result, but he is liable only for failure to exercise reasonable care and skill. The degree of skill and care which may be required of an architect in the preparation of his plans has been held to be a question for the jury."

And in the same volume and subject, section 19, page 1011, it is stated:

"An architect will also be held responsible for damages sustained by his employer where, due to unreasonable negligence and lack of skill, his plans and specifications were faulty and defective. But his undertaking does not imply or warrant a satisfactory result. There is no assurance that miscalculations will not occur. Liability rests only on unskilfulness or negligence, and not upon mere errors of judgment. The question of the architect's negligence in the preparation of plans is one of fact and within the province of the jury. The architect is not liable, however, if the employer has failed to follow the plans in an important particular and damages result which may have been due to such departure."

The issue in the instant case is one of fact as to whether the defendant was damaged by reason of the alleged careless, negligent and incompetent manner in which the plaintiff prepared the plans and specifications for the construction of defendant's hotel. We have given careful consideration to the evidence and the entire record and have found the evidence insufficient to support the claims of the defendant. H. M. Leonhard, a registered and practicing architect in the City of Bismarck, testifying in regard to the plans and specifications in question stated that they conformed to accepted architectural practice. Roy Amick, a plumber, testified that he laid the wet return pipes under the cement floor in the basement and that he tested the pipes for leaks before the floor was laid. That he followed the specifications prepared by the plaintiff except one change requested by the defendant. He stated that the leak in the pipes was caused by a steel reinforcing rod which someone had driven through one of the pipes. Mr. Ritterbush, also a registered architect of Bismarck, North Dakota, testifying for the defendant had no general criticism of the work and plans and specifications prepared by the plaintiff. Several other witnesses testified for the defendant, but none of them pointed out any particular or material defect in the plans and specifications prepared by the plaintiff. The defendant took over the supervision of the major part of the construction of the building and must be held responsible for any deviation from the plans and specifications prepared by the plaintiff.

It has been suggested that the record discloses that the plaintiff was not a registered architect and therefore was not entitled to recover in this action under the provisions of Section 43-0309 NDRC 1943 which reads as follows:

"No person shall practice architecture as a profession in this state unless he has obtained from the board (Board of Architecture) a certificate of registration and is registered as an architect."

There is no allegation in the complaint that the plaintiff is a registered architect. The action is brought to recover commissions earned as an architect in preparing plans and specifications for a hotel and as work supervisor during the construction thereof. The plaintiff nowhere states or contends that he is a registered architect,— in fact he stated in his testimony that he was not a registered architect, and that he did not have to be registered because he was a practicing architect before the law requiring registration became effective.

The answer and counterclaim alleges that "the plaintiff did hold himself out to be a qualified registered architect" but there is no allegation or claim that plaintiff is barred from bringing the action or from recovering the commissions claimed on the grounds that he is not a registered architect. In fact, in paragraph VII of defendant's counterclaim it is alleged "that all of such damages so suffered by the defendant have been due entirely and solely and proximately to the plaintiff's negligence, carelessness and incompetence." The fact that plaintiff was not a registered architect was not made an issue in the district court, and was not argued by either counsel in this court. In appellant's brief the issues are stated as follows:

"The issues involved in the appeal of this action are:

"1. Upon what percentage of the total value of the construction of the building in question was the plaintiff entitled to receive 5% and what percentage 3%?

"2. In what amounts was the defendant damaged as a consequence of the faulty and defective plans of the plaintiff and the latter's negligence and lack of diligence in supervising the work of the contractor?"

■■ The issues stated were the only issues argued in the trial court and in this court. The rule is well settled that propositions cannot be raised for the first time on appeal. Maher v. Ramsey County, 75 N.D. 760, 32 N.W.2d 679; McDonald v. Abraham, 75 N.D. 457, 28 N.W.2d 582. An issue not within the pleadings or before the trial court cannot be considered when raised for the first time before the Supreme Court on appeal. Soderfelt v. City of Drayton, 79 N.D. 742, 59 N.W.2d 502. Defenses to an action on a note could not be raised for the first time on appeal. Bormann v. Beckman, 73 N.D. 720, 19 N.W.2d 455.

Since the question whether the plaintiff was barred from recovery on the ground that he was not a registered architect was not within the pleadings, was not raised in the trial court, and was not raised by the defendant in this court, it cannot be considered on this appeal taken on other and wholly different issues.

After a careful consideration of the record we conclude that the judgment of the trial court is correct and it is affirmed.

BURKE, C. J., and MORRIS and GRIMSON, JJ., concur.

JOHNSON, J., being disqualified, did not participate, HARVEY J. MILLER, District Judge, sitting in his stead.

HARVEY J. MILLER, District Judge.

I dissent.

Plaintiff seeks to recover for services rendered as an architect, and to foreclose a mechanic's lien filed by him to secure his claim. The defendant Nielsen, in his answer to the complaint and in his counterclaim, among other things, alleged a general denial, that plaintiff represented himself to be a registered architect and prayed that plaintiff take nothing by this action. The record discloses that plaintiff was not licensed or registered as an architect in this state, which fact he admitted on cross-examination. The appellant demands a trial de novo in this Court.

"No person shall practice architecture as a profession in this state unless he has obtained from the board a certificate of registration and is registered as an architect." Sec. 43-0309, N.D.R.C. of 1943.

This provision was orginally Ch. 58, § 15 of the 1917 S.L. as follows:

"No person shall begin to use the title 'Licensed Architect' or any variation of the same, or any others words, letters or device to indicate that the person using the same is a licensed architect, after the approval of this act, without being registered as an architect, in accordance with the provisions of this act."

This court, construing such section, in State v. Gillespie, 39 N.D. 512, 168 N.W. 38, 40, dated May 11, 1918, held: "There is no express prohibition of the practice of architecture by an unlicensed person."

Thereafter Ch. 58, § 15, supra, was amended by Ch. 17 of the 1919 Sp. Session Laws by adding to such section, "All persons not engaged in the practice of architecture as a profession prior to March 15, 1918, shall obtain a license to practice architecture in this State."

The foregoing clause, however, was omitted from the present law.

Question now arises whether the present law is a continuation of the former law or a new enactment.

Our legislature, in the revision of our code, re-enacted the laws set forth therein, including certain statutes defining the construction to be given the provisions of the Revised Code, as follows:

"The rule of the common law that statutes in derogation thereof are to be construed strictly has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be construed liberally, with a view to effecting its objects and to promoting justice." Sec. 1-0201, N.D.R.C. of 1943.

"No source note shall be deemed a declaration by the legislative assembly as to the purpose, scope, or effect of any section to which such source note or reviser's note relates." Sec. 1-0211, N.D.R.C. of 1943.

"The provisions of this code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments." Sec. 1-0225, N.D.R.C. of 1943.

"No statute, law, or rule is continued in force because it is consistent with the provisions of this code on the same subject, but in all cases provided for

by this code all statutes, laws, and rules heretofore in force in this state, whether consistent or not with the provisions of this code, unless expressly continued in force by it, are all repealed and abrogated. * * *" Sec. 1-0219, N.D.R.C. of 1943.

"This code shall take effect and be in force upon such date as may be fixed therefor by proclamation of the governor." Sec. 1-0235, N.D.R.C. of 1943.

Also, in that connection, this court has held:

"In the codification of statutes the general presumption obtains that the codifiers did not intend to change the law; and mere changes of phraseology or punctuation, or the addition or omission of words, or the rearrangement of sections or parts of a statute, or the placing of portions of what formerly was a single section in separate sections, does not operate to change the operation, effect or meaning of the statute *unless the changes are of such nature as to manifest clearly and unmistakably a legislative intent to change the former law.*" State ex rel. Johnson v. Broderick, 75 N.D. 340, 27 N.W.2d 849, 852; Eisenzimmer v. Bell, 75 N.D. 733, 32 N.W.2d 891; Chester v. Einarson, 76 N.D. 205, 34 N.W.2d 418, 35 N.W.2d 137; Belakjon v. Hilstad, 76 N.D. 298, 35 N.W.2d 637.

It will be noted that Sec. 43-0309, supra, is not now substantially the same law as originally enacted in Ch. 58, § 15 of the 1917 S.L. and does not consist of mere changes of phraseology or punctuation, or omission of words, but instead made a basic change and prohibits the practice of architecture by anyone without a certificate of registration, a fact which this court in State v. Gillespie, supra, said the old act did not prohibit.

Since Sec. 43-0309, supra, is not substantially the same as the original act, it may not be construed as a continuation thereof as prescribed by Sec. 1-0225, but instead must be deemed a new enactment,

which, under the provisions of Sec. 1-0219, supra, repealed and abrogated such original act.

This conclusion is in harmony with the decisions of this court above cited, wherein the question of what was the clear intent of the legislature was made the determining factor as to when an existing statute is a continuation of an earlier one, or a new enactment. That intent has been clearly and positively expressed in Sec. 43-0309, supra. No person may practice architecture without a certificate of registration.

It is my opinion that the plaintiff was required to have a license to practice architecture; that the burden was upon him to prove such fact, and therefore he is not entitled to recover in this action.

"A contract, entered into by a person in the course of an occupation or business in which he is engaged without taking out a license or paying a license fee or tax as required by law, is void and unenforceable where the statute or ordinance expressly vitiates such contracts, or where it expressly prohibits the carrying on of such occupation or business without a license, permit, or approval, or the payment of the tax, even though it does not expressly declare such contracts to be void. * * *" 53 C.J.S., Licenses, § 59, p. 711; Grant v. Weatherholt, 123 Cal.App.2d 34, 266 P.2d 185; Minter Bros. Co. v. Hochman, 231 Minn. 156, 42 N.W.2d 562; Comet Theatre Enterprises v. Cartwright, 9 Cir., 195 F.2d 80, 30 A.L.R.2d 1229 and Annotation.

The majority do not dispute that under Sec. 43-0309, N.D.R.C.1943, the plaintiff was required to be registered as an architect, but urge that no issue was raised on this fact and even emphasize that plaintiff did not claim to be a registered architect.

The statute is mandatory and plaintiff's complaint does not state a cause of action without an allegation that he was registered. The defendant alleged that plaintiff represented himself to be a registered ar-chitect and demanded that the plaintiff take nothing. On this appeal, he has demanded a trial de novo, which simply means that the case should be tried the same as if it had not been tried before.

The pleadings formed the issues, and the evidence supported defendants' allegation that plaintiff was not registered. That issue was raised by defendants' answer and counterclaim in the District Court and may not be disregarded on a trial de novo in this Court. The rule that issues may not be raised for the first time on appeal has no application in this case.

The plaintiff is not entitled to recover.

I concur in the conclusion that the defendant is not entitled to recover on his counterclaim.